*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RAFAEL L. PHINAZEE,

*Defendant-Appellant.*

No. 06-5730

>

---

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 03-00145—Curtis L. Collier, Chief District Judge.

Argued: October 25, 2007

Decided and Filed: February 7, 2008

Before: MERRITT, ROGERS, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Hugh J. Moore, Jr., CHAMBLISS, BAHNER & STOPHEL, Chattanooga, Tennessee, for Appellant. Gregg L. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Hugh J. Moore, Jr., CHAMBLISS, BAHNER & STOPHEL, Chattanooga, Tennessee, Thomas C. Greenholtz, SHUMACKER, WITT, GAITHER & WHITAKER, Chattanooga, Tennessee, for Appellant. Gregg L. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

McKEAGUE, J., delivered the opinion of the court, in which ROGERS, J., joined. MERRITT, J. (pp. 9-14), delivered a separate dissenting opinion.

---

## OPINION

---

McKEAGUE, Circuit Judge. Defendant-appellant Rafael Phinazee was convicted by a jury of conspiracy to distribute crack and powder cocaine. The presentence report ("PSR") calculated his total offense level at 38 and placed him in a criminal category of VI, which resulted in a Sentencing Guidelines range of 360 months' imprisonment to life.[1] The district court initially sentenced Phinazee to 360 months' imprisonment. After his appeal to this court and a subsequent remand in light of *United States v. Booker*, 543 U.S. 220 (2005), he was re-sentenced to 300 months'

---

[1] The 2003 version of the Sentencing Guidelines was used in this case.

imprisonment. Phinazee again appealed, and now argues that his sentence is substantively unreasonable because the downward variance was not large enough. For the reasons stated below, we AFFIRM defendant's sentence.

## I. BACKGROUND

In 1997, several federal and local law enforcement agencies were involved in a long-term investigation that targeted drug traffickers in the Chattanooga, Tennessee area that resulted in over fifty convictions. In 2003, as part of that investigation, a federal grand jury indicted Rafael Phinazee and various co-conspirators on one count of conspiracy to distribute fifty (50) grams or more of crack cocaine and 5,000 grams or more of powder cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). The jury found Phinazee guilty of the drug conspiracy as charged in the indictment.

On August 20, 2004, Phinazee was sentenced to a term of 360 months' imprisonment under the then-mandatory Sentencing Guidelines.[2] Phinazee filed a timely notice of appeal, and on January 6, 2006, we affirmed his conviction but remanded the case to the district court for re-sentencing in light of *Booker*. *United States v. Hereford*, 162 F. App'x 439, 440-41 (6th Cir. 2006).

On May 11, 2006, the district court re-sentenced Phinazee to a term of 300 months' imprisonment, five years below the bottom of the now-advisory Sentencing Guidelines range.[3] The Amended Judgment was entered. Phinazee previously had filed a timely notice of appeal on May 16, 2006.

## II. ANALYSIS

On appeal, Phinazee argues his sentence of 300 months is substantively unreasonable. In *Booker*, the Supreme Court declared the once mandatory Sentencing Guidelines to be advisory in nature. 543 U.S. at 245. The *Booker* Court further announced that the proper standard of appellate review for criminal sentencing appeals is reasonableness. *Id.* at 260-62. Our reasonableness review is two-fold, requiring that a sentence be both procedurally and substantively reasonable. *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006). A sentence may be procedurally unreasonable if the district court "did not appreciate the non-mandatory nature of the guidelines, did not correctly calculate the sentencing range under the guidelines, or did not consider the § 3553(a) factors." *Id.* (citations omitted). "[A] sentence may be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007) (citation and quotation marks omitted).

We review the reasonableness of a sentence using the abuse-of-discretion standard of review. *Gall v. United States*, 128 S.Ct. 586, 594 (2007). If defendant's sentence is within the Sentencing Guidelines range, we may, but need not, apply a presumption of reasonableness. *Id.* at

---

[2] In Phinazee's initial sentencing, the PSR identified his criminal activity as conspiracy to distribute at least 680 grams of crack cocaine, which resulted in a base offense level of 36. A two-level enhancement was applied for possession of a firearm in connection with the drug offense, resulting in an adjusted offense level of 38. He was adjudicated a career offender based on three prior felony drug convictions. The PSR used the higher adjusted offense level of 38 because under the career offender provision the offense level was 37. Phinazee had a total of 11 criminal history points, placing him in criminal history category V. Because Phinazee was a career offender, his criminal history category was enhanced to VI. Based on a total offense level of 38 and a criminal category of VI, Phinazee's Sentencing Guidelines range was 360 months' imprisonment to life.

[3] The PSR from the initial sentencing was used by the district court for the re-sentencing.

597 (citation omitted). Where, as here, a defendant's sentence is outside the Sentencing Guidelines range, either above or below it, we cannot apply a presumption of unreasonableness. *Id.* Nonetheless, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* Indeed, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* As we explained in *Kirchhof*:

> This case is unusual because the appellant is a defendant who argues that the downward variance from the recommended guidelines range that he received is unreasonable because it is not large enough.

*See United States v. Kirchhof*, 505 F.3d 409, 414 (6th Cir. 2007) (citation omitted) (an analogous pre-*Gall* decision because the defendant argued the variance was not large enough and this court applied a non-rigid form of the proportionality analysis that does not run afoul of *Gall's* admonitions to determine the sentence was reasonable).

Phinazee does not contend that the district court selected his sentence arbitrarily, based its decision on impermissible factors, or failed to consider pertinent § 3553 factors. Rather he asserts the district court's sentence was substantively unreasonable inasmuch as it improperly deferred to the Sentencing Guidelines with respect to two of the factors, namely deterrence and retribution, and that the court improperly weighed those same factors over the others.

First, Phinazee argues that the district court should have made a specific finding that stated the reasons it rejected applying a ten year sentence as permitted for violators of 21 U.S.C. § 841(b)(1)(A). He cites no authority for the proposition that a district court must make a specific finding about why it imposed a sentence higher than the statutory minimum. As the government notes, the statutory minimum is not a sentencing factor. *See* 18 U.S.C. § 3553(a). In any event, the ten-year minimum sentence that appellant repeatedly relies on is not the appropriate benchmark. Here, as the government explains, it could have filed a notice of enhancement pursuant to 21 U.S.C. § 851 because Phinazee had at least two prior felony drug convictions. Such an enhancement would have subjected Phinazee to a statutory mandatory sentence of life imprisonment, not a ten-year sentence. *See* 21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release."). Moreover, Congress has indicated that career offenders, like Phinazee, should be sentenced at or near the maximum term of imprisonment, which is life here. *See* 28 U.S.C. § 944(h). The district court explicitly recognized its obligation to impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in § 3553(a) before it imposed defendant's sentence. That the district court did not also explicitly reject the statutory minimum is of no consequence. *See United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) (stating a district court is not required to explain "*why* an alternative sentence was *not* selected").

Second, Phinazee objects to the district court's reliance on general deterrence rather than specific deterrence. He argues the district court failed to "consider how deterrence would adequately be promoted on the circumstances of this case." Appellant's Br. at 23. We addressed an analogous argument in *United States v. Turner*, 173 F. App'x 402, 407-08 (6th Cir. 2006) (reviewing for plain error and finding that general deterrence is an acceptable basis for sentencing). Under § 3553, the district court may impose a sentence "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The *Turner* court's analysis is persuasive in this respect:

> The plain language of the statute-that courts may "afford adequate deterrence" in sentencing-also militates against limiting the authority of the court to specific

deterrence. Nothing in the explicit language indicates a congressional intent to limit the court's authority. We note that this conclusion comports with the longstanding and uncontroversial practice of considering general deterrence in sentencing. *See United States v. Barbara*, 683 F.2d 164, 167 (6th Cir. 1982) (noting traditional use of both specific and general deterrence).

*Turner,* 173 F. App'x at 408; *see also United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006) (affirming a defendant's sentence where the district court in its § 3553(a) analysis stated that it doubted the defendant would ever engage in the conduct again, but that a primary sentencing factor was the need "to deter other similarly situated" individuals from engaging in the conduct). Here, the district court found that:

> The reality is, here in Chattanooga and in most other cities in this nation, there are young men who grew up in circumstances such as Mr. Phinazee related. These young men are all tempted to involve themselves in selling drugs because it is easy to do. Drugs are plentiful, and you can make money from doing it. Many of these young men have drug habits themselves, and they use the proceeds from their trafficking activities to support their own drug habit. That is a problem in this country. So the issue becomes, what type of sentence is necessary to tell these young men who are dropping out of high school, who are not going to work, who are doing other things that are not desirable socially, that if you engage yourself in the type of activity that Mr. Phinazee involved himself in . . . that you will receive such a punishment that they will be deterred from engaging in that punishment.

J.A. 143-44. Accordingly, the district court did not err by relying on general deterrence considerations when it sentenced Phinazee.

Next, Phinazee objects to the district court's explicit reliance on Congress and the Sentencing Commission as to the deterrence and retribution factors.[4] Phinazee's argument is unpersuasive because the Sentencing Guidelines range is an explicit factor that a district court must consider in its sentencing analysis. *See* 18 U.S.C. § 3553(a)(4); *see also Gall,* 128 S.Ct. at 596 (stating "the Guidelines should be the starting point and the initial benchmark"); *Gale*, 468 F.3d at 934 (stating that "[a]lthough the Guidelines are now advisory, rather than mandatory, the district court must still consider the Guidelines in fashioning a defendant's sentence"). While the district court here stated it would defer to a within Sentencing Guidelines range sentence upon consideration of two § 3553 factors, after consideration of the other factors it determined that a lower than Sentencing Guidelines range sentence was warranted. *See United States v. Buchanan*, 449 F.3d 731, 734 (6th Cir. 2006) (affirming a sentence wherein the district court stated that after "[c]onsidering and weighing" all the § 3553(a) factors they "weigh in favor of a Guideline sentence" with the exception of one factor); *United States v. Cage*, 458 F.3d 537, 543 (6th Cir. 2006) (holding that the district court did not err in viewing the Sentencing Guidelines as a starting point before weighing the Sentencing Guidelines in relation to other § 3553(a) factors). The district court's approach was proper and Phinazee cites no authority to suggest otherwise. In this case, Phinazee's argument is particularly problematic because the district court varied downward five years, and yet, he complains that the variance was not large enough.

---

[4] To the extent this argument could be construed as procedural unreasonableness, it fails for the reasons explained *infra*. The characterization of "substantive" or "procedural" here is not dispositive. *See United States v. Malone*, 503 F.3d 481, 484 (6th Cir. 2007) (recognizing that a categorization as "procedural, substantive, or a combination of the two" is irrelevant where the issue was reliance on an impermissible factor). The district court appreciated the non-mandatory nature of the Sentencing Guidelines as evidenced by its downward variance. Moreover, Phinazee does not argue the district court incorrectly calculated the Sentencing Guidelines range or failed to consider the factors set forth in § 3553(a).

To the extent Phinazee and the dissent argue that the district court did not weigh rehabilitation enough in its sentencing analysis, such an argument similarly fails. *See United States v. Perry*, 228 F. App'x 557, 559 (6th Cir. 2007) ("Rehabilitation is but one factor, however. The district court must consider all the factors, but need not necessarily 'engage in a ritualistic incantation' of the factors." (quoting *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005))). Here, the district court engaged in the prudent balancing of relevant factors that § 3553(a) contemplates. The district court found that:

> The next job for the Court, then having articulated its reasons and these four factors, is to balance these factors. The parsimony provision in Section 3553(a) instructs the Court that it should impose a sentence sufficient but not greater than necessary to comply with the purposes that I have just stated.

> The Court, after taking into account the nature and circumstances of the offense and the history and characteristics of the defendant[], concludes that [a] sentence[] slightly less than the sentence[] the Court imposed initially would be sufficient to achieve the purposes. The primary consideration, again, is retribution and general deterrence. So the Court has given heavy weight to those two, but yet the Court has balanced those against the Court's assessment of the need for rehabilitation and the need to incapacitate you. . . .

> * * *

> [T]he Court will impose a sentence of 300 months. . . . That's a reduction of five years. . . .

> The Court believes that [this] sentence[], even though [it is] less than the guideline range that the Court calculated, [is] adequate to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to others who might be inclined to involve themselves in this type of criminal conduct.

> The Court does not believe the need to protect the public from future crimes of these two defendants is so great that a harsh sentence should be imposed. The court also believes that the need to afford the defendant[] rehabilitation is not so great. *And the Court's assessment of the these last two factors the Court has balanced against the earlier two to persuade the court that some reduction is necessary.*

J.A. 145-46 (emphasis added); *see also* J.A. 142-43 ("So to the extent that further rehabilitation is needed for rehabilitation, the Court does not believe that should be a major factor. The Court sees the need for rehabilitation in this case as being small."). In particular, with respect to Phinazee's addiction issues, the district court ordered that he receive a 500-hour residential institution drug treatment program while he is incarcerated. J.A. 148.

To the extent Phinazee argues the district court ignored his post-offense rehabilitation, his argument similarly fails. In *Davis*, the court addressed a variance downward to one day from a Sentencing Guidelines range of 30 to 37 months. 458 F.3d at 497. "One of the featured grounds for the variance -the 14-year gap between Davis's crimes and his second sentencing hearing-does not support such a dramatic variance (and indeed may not support a variance at all)." *Id.* The court explained that:

> Time intervals of this sort appear nowhere in the list of § 3553(a) factors. The underlying prosecution occurred within the statute-of-limitations period. And, Davis

has not raised any speedy-trial objections to the prosecution. Nor, at any rate, is it invariably clear when a legal dely in prosecuting or sentencing an individual becomes a friend or foe of the defendant. What criminal suspect, after all, wants the government (and the grand jury) to pull the indictment trigger too quickly?

*Id.* That said, the delay between the "time a crime is committed and the time a guilty defendant serves his sentence of course should not be casually ignored" because "it *may* allow him to show demonstrable signs of rehabilitation.*" Id.* at 497-98 (emphasis added). The district court heard argument from defendant's counsel addressing rehabilitation during the time period between the indictment and the sentencing. *See, e.g.*, J.A. 124-35 ("Five years after this conspiracy wound up, he's indicted by the government and hauled into court. During the pendency of that five years, Mr. Phinazee, of course, is still an addict, but during the pendency of that five years, he seeks drug treatment . . . , he gets a GED, he goes to college . . . he starts his own business; he tries twice, actually."). Yet, the district court also heard the government's response to Phinazee's rehabilitation claims and was entitled to weigh it with all the other factors. *See, e.g.*, J.A. 129 ("[Defendant's counsel] argues [sic] that this gentleman has turned his life around. I respectfully beg to differ, Your Honor. Mr. Phinazee didn't learn a lesson, never learned a lesson, to this day hasn't learned a lesson."); J.A. 130 (referring to the PSR and emphasizing that no income was reported to the Social Security Administration from 2001 to 2004).[5] Indeed, this argument was not ignored here and, as discussed *infra*, rehabilitation was, in part, the grounds for the district court's downward variance. That the district court did not explicitly explain why a larger variance was not warranted is of no consequence. *See Gale*, 468 F.3d at 944. Indeed, we have explained that:

> [A] district court need not describe in detail or list all the documents or other evidence it considered during sentencing. It is fair to say that if an appellate court cannot rely on a lower court to do its duty by reviewing the factual record, our system of justice will collapse of its own weight. There is a presumption in the law that a district court knows and applies the law correctly, and a similar presumption must extend to the court's factual review of the record. Thus, without some affirmative indication in the record to the contrary (apart from the sentence imposed), we presume that a district court has reviewed the evidence provided to it.

*Id.* at 941 (citation omitted); *see also Rita v. United States*, 127 S.Ct. 2456, 2468-69 (2007) (stating a district court need not provide an explanation for rejecting a mitigating argument if "the matter is conceptually simple" and "the record makes clear that the sentencing judge considered the evidence and arguments"); *United States v. Pettie*, 242 F. App'x 313, 317 (6th Cir. 2007) (stating that a district court need not discuss a type of "regular, recurring circumstance" absent a showing of the exceptional aspects of that circumstance).

Moreover, Phinazee's rehabilitation is not atypical or exceptional such that it warrants a variance larger than the five years already granted by the district court. *Cf. United States v. Allman*, 119 F. App'x 751, 755 (6th Cir. 2005) (stating "[o]nly exceptional rehabilitation can support a downward departure"). Even if we would have varied down more than five years, "our review is not de novo and we cannot conclude that the sentence imposed by the district court is substantively unreasonable." *United States v. Cherry*, 487 F.3d 366, 372 (6th Cir. 2007). "The bottom line is that

---

[5] We also note that at Phinazee's initial sentencing hearing his post-offense rehabilitation was extensively discussed. *See, e.g.,* Initial Sentencing Tr. 56:5-59:19; 63:4-65:3; 67:4-75:22. In particular, the government stated that within the post-offense time period, the government had evidence of "at least two buys off this man." *Id.* at 71:13-21. The district court inquired whether the government was prepared to put on such evidence and the government agreed to do so after a short recess. *Id.* at 73:21-74:25. Upon resuming the hearing, the government stated that it had turned over to defense counsel "documents relative to the events that I indicated for the court" and defense counsel proceeded to "withdraw[] the motion for downward departure." *Id*. at 75:11-22.

when deciding questions of 'substantive unreasonableness' in the post-*Booker*, advisory-Guidelines world, we must continue to be wary of substituting our judgment for that of the district court." *United States v. Hairston*, 502 F.3d 378, 385-86 (6th Cir. 2007).

The dissent asserts that Phinazee's sentence "is particularly harsh in light of the sentencing judge's reasonable statement to Phinazee from the bench that based on considerations of 'rehabilitation' and 'incapacitation' alone, Phinazee deserved only a short sentence." First, we are unclear what the dissent considers a "short" sentence. Regardless, the district court simply did not say or infer that Phinazee deserved a short sentence. Rather, what the district court said was that it did not believe that the need for additional rehabilitation or incapacitation "should be a major factor" in determining Phinazee's sentence. J.A. 143. Presumably, this is precisely why the district court varied downward five years from the bottom of the applicable Sentencing Guidelines range and imposed a 300-month sentence. Phinazee points us to no factors that would require the imposition of an even shorter sentence. *Cf. Kirchhof*, 505 F.3d at 415 (finding "[n]one of the other factors to which Kirchhof directs the court are so compelling as to necessitate a shorter sentence"). Indeed, in asking us to find his sentence unreasonable, Phinazee and the dissent fail to direct our attention to a single case in this circuit in which upon a *Booker* remand that resulted in a downward variance from the initial sentence and the Sentencing Guidelines range, we nonetheless found the sentence substantively unreasonable because that variance was not large enough. While Phinazee's "sentence was lengthy, he has not established that the sentence was unreasonable." *United States v. Ward, et. al.*, 506 F.3d 468, 478 (6th Cir. 2007) (citation omitted).

We pause to respond to some of the dissent's other comments. The dissent argues that judicial fact-finding used to ratchet up the sentence here implicates the Sixth Amendment. We first note that Phinazee himself did not even raise a Sixth Amendment objection to the use of judicial fact-finding and therefore it is waived. However, even if it were not waived, any such argument ignores the straightforward import of the Supreme Court's ruling in *Rita.* In response to Rita's objection to appellate courts applying a nonbinding presumption of reasonableness to a within-Guidelines range sentence, the Supreme Court explained:

> In our view, however, the presumption, even if it increases the likelihood that the judge, not the jury, will find "sentencing facts," does not violate the Sixth Amendment. This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence.

*Rita,* 127 S.Ct. at 2465-66. Accordingly, any Sixth Amendment claim here is meritless.

The dissent also suggests that Phinazee's sentence was too harsh in comparison to his co-defendant and supplier, Lindsey Morris. In his statement of issues submitted for review, Phinazee argues in a similar vein that "the career-offender provision of the Guidelines should not be followed as it results in a grossly disproportionate sentence when compared to those with the greatest level of culpability for the offense." Appellant's Br. at 4. Yet, he fails to present even the slightest argument on this point. Because issues "adverted to on appeal in a perfunctory manner unaccompanied by some effort at developed argument are deemed waived," we need not address the issue. *United States v. Demjanjuk*, 367 F.3d 623, 638 (6th Cir. 2004) (citation and quotation marks omitted); *see also United States v. Mick*, 263 F.3d 553, 567 (6th Cir. 2001) (deeming the defendant's Fifth Amendment argument waived because it was summarily raised in the brief without any accompanying argument). In any event, this argument fails. To be sure, Morris received a lower sentence than Phinazee based on downward departure for substantial assistance and Phinazee's conviction was his fourth felony drug conviction, eleventh felony conviction, and he had eighteen other arrests not reflected in his criminal history score. Phinazee and the dissent fail to recognize that *unwarranted* disparities in sentencing is what should be avoided, *not* those that are

warranted.  *See* 18 U.S.C. § 3553(a)(6) (sentencing courts shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"); *Cf. Gall*, 128 S.Ct. at 600  ("[I]t is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated.").  Moreover, even assuming the district court did not apply the career offender enhancement to raise Phinazee's criminal history category to VI, the applicable Sentencing Guidelines range would have been the same under category V (i.e., 360 months to life).  What is more, the PSR did not use the offense level calculated from the career offender provision because his adjusted offense level was higher without it.  Accordingly, any arguments that Phinazee's career offender status artificially inflated his sentence or that his sentence was unfairly disproportionate to others fail.  *See United States v. Johnson*, 445 F.3d 339, 343 (6th Cir. 2006) ("[B]y devising a recommended sentencing range for every type of misconduct and every level of criminal history, the Guidelines as a whole embrace 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'") (quoting 18 U.S.C.A. § 3553(a)(6))).

Finally, the district court here did not engage in "rote sentencing" of Phinazee, irrespective of the dissent's suggestion to the contrary.  Rather, after the *Booker* remand, it held a re-sentencing hearing and imposed a sentence that varied downward five years from the lowest end of the applicable Sentencing Guidelines range.  Our review of the hearing transcript confirms that the district court properly considered the relevant sentencing factors and provided a reasoned explanation for the sentence.

The bottom line is that Phinazee and the dissent want this court to decide afresh whether Phinazee's circumstances warrant a larger variance or whether the sentence is reasonable, yet the Supreme Court squarely has forbidden the Courts of Appeals from engaging in that type of review. *See, e.g., Gall*, 128 S.Ct. at 602 ("But it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence.").  Indeed, it seems odd for the dissent to rely so heavily on the Supreme Court's recent rulings in *Rita*, *Gall*, and *Kimbrough* when the clear, overriding import of those cases is that appellate courts must respect the role of district courts and stop substituting their judgment for that of those courts on the front line. If the dissent's term of "guidelinitis" ever reaches mainstream use, maybe Merriam-Webster will include it as an example for its definition of "irony."

## III.  CONCLUSION

For all the aforementioned reasons, we AFFIRM defendant's sentence.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. This 25-year drug sentence is one more war-on-drugs case (among the thousands assigned to the federal courts each year by the Department of Justice) where a drug-addicted, young, black male goes to a federal prison for an unnecessary amount of time. Like many others, it is a case of grossly unfair sentencing disparity — in this case, for example, the leader of the conspiracy goes to prison for one-half the time as his young black minion. It is another post-Booker case in which the sentencing judge still says simply — quote — I am going to "defer to the pronouncements of the Sentencing Commission," even though the penalogical goals of "rehabilitation and incapacitation" would call for a much lesser sentence. The sentencing judge conforms, he says, because the Commission knows best when it comes to — again, quote— "retribution." And, of course, the court of appeals panel in this case, like most other court of appeals panels, simply again upholds the "deference" to the guidelines.

This case is one more example of the continuing problem, the problem of guidelineism, or "guidelinitis," the inability of most federal courts to break their habit of mechanically relying just on the guidelines alone. The real "irony" in the system is that after *Blakely-Booker* told us to return to individualized sentencing, the federal courts continue on a routine, daily basis in most cases, including this one, to make fact findings leading to a determinate sentence. In doing so we continue to do what *Blakely-Booker* prohibited. We violate the Constitution twice, first the original Constitution in Article III, § 2, that the "Trial of all Crimes . . . shall be by a jury" and then the Sixth Amendment right of the defendant to have the facts found "by an impartial jury" "in all criminal prosecutions." The Founding Fathers were serious about having jurors find the facts, as the Supreme Court keeps reminding us.

The majority is wrong in its view that the recent *Gall* and *Kimbrough* cases still require sentencing judges to begin the sentencing process by finding enhancements or aggravators that increase the sentence above the base offense level corresponding to the jury verdict or guilty plea. Rather in both of those cases the Supreme Court marshaled a strong majority to stop courts of appeals from making sentencing judges conform to the U.S. Sentencing Guidelines system of ratcheting up the sentence by finding as fact one enhancement after another. My colleagues forget that in those cases the Supreme Court reversed the courts of appeals for requiring conformity by district judges. If courts of appeals should break the habit of conformity, district judges themselves should reform their previous mindset of deference.

In our guideline sentencing system, these injustices flow inevitably from the psychological process of starting with the base offense level corresponding to the facts of the jury verdict or plea *followed immediately by a strictly mechanical regime* of climbing the sentencing ladder upward enhancement fact by enhancement fact. The sentencing mind is now at the top of the ladder and that series of fact findings now becomes the presumptive sentence. A firm figure is written down as the proper guideline sentence. This upward psychological structure does not provide any downward structure so that the harsh sentence can be corrected by sensitivity to the character of the defendant, the possibility of rehabilitation, other mitigating factors and the consequences of an alternative decision. In other words, all the psychological structure is upward. There is no structure for the application of the judicial conscience that we sometimes call "equity." The result is a system of *de facto*, mandatory guideline sentencing, *i.e.*, "guidelinitis."

By ratcheting up the sentence aggravator by aggravator, as is typical under the guidelines, the District Court here (as though *Booker* had never been decided) sentenced the defendant to 25 years' imprisonment for a victimless drug conspiracy offense in which he was a very minor

participant. The defendant, Phinazee, simply used and sold small amounts of crack to which he was addicted. For a similar drug conspiracy offense involving a minor participant, the Supreme Court just recently upheld a short sentence imposed by a federal judge in Virginia, *Kimbrough v. United States*,128 S. Ct. 558 (2007). In the instant case, Phinazee received a small amount (2-4 ounces) each week for 3 months from Lindsey Morris, who was the supplier for a number of other purchasers, and was the hub or leader of this wheel and spoke conspiracy that lasted for several years. Phinazee participated for less than 15% of the time Morris ran the drug operation. Yet Morris was sentenced to 155 months, one-half the time imposed on Phinazee, because Morris cooperated with the government by fingering and then testifying against each of the spokes of the conspiracy he himself organized. By comparison with the sentence given Morris and the sentence in the *Kimbrough* case, the sentence for Phinazee is beyond the pale of reason. It is particularly harsh in light of the sentencing judge's reasonable statement to Phinazee from the bench that based on considerations of "rehabilitation" and "incapacitation" alone, Phinazee deserved only a short sentence. (J.A. 143.) But the sentencing judge then turned around and said that based on "retribution" and "general deterrence," the judge felt bound to "defer to the pronouncements of the Sentencing Commission." (J.A. 145.)

> On these points, the judge's exact statement was:
>
> The next factor that the Court will consider would be that of incapacitation, that is, if there is something about you that the Court sees that is so dangerous that we need to incapacitate you so that you will not commit crimes against the public. The Court believes, because it has seen you, presided over your case, has read the presentence report, has heard what your attorneys have said, has heard what the U.S. Attorney has said, that it is in the best position to make the determination based on rehabilitation and also incapacitation. *The Court believes that there is some risk, but the Court does not believe that it is a great enough risk that incapacitation should be a major factor in determining a sentence in this case.*
>
> . . . .
>
> Again, it is difficult for a district judge to determine what type of sentence, in the grand scheme of things, is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *The Court believes that the Sentencing Commission and Congress are in a better position to make these judgments, and the Court will defer to the pronouncements of the Sentencing Commission through the sentencing guidelines in reflecting the seriousness of the offense, that is, retribution.*

(J.A. 143, 145, emphasis added.) The sentencing judge clearly believed that on the question of "just punishment," he should "defer" even though the sentencing judge knew that the Guidelines regard mitigating factors and rehabilitation as "not relevant" considerations in the sentencing process. This deference by the judge and the panel majority is contrary to my understanding of the law post-*Blakely* and *Booker*. I see nothing in the record that would lead to the conclusion that Phinazee, once finally cured of his drug addiction, would likely get back into the drug business. I can see no benefit at all to anyone for sending this man to prison for 25 years. Not only courts of appeals, as the Supreme Court told us in *Gall* and *Kimbrough*, but also sentencing judges, as I believe the Supreme Court told us in *Blakely-Booker*, should simply stop blindly "deferring" to the Sentencing Commission in such cases.

> Such harsh sentences are par for the course under the guidelines. The sentencing court imposed a harsh sentence without seriously considering mitigating family and personal factors or rehabilitation possibilities — all in line with the U.S. Sentencing Commission rules against the

consideration of such individual factors in Chapters 5H and 5K of the Guidelines.[1] This refusal to seriously consider individual factors, including the need for incapacitation and rehabilitation, has been the most important characteristic of the work of the Sentencing Commission. From the beginning, the guidelines have emphasized collectives, not individuals; and individualized sentencing by federal judges, the weighing of aggravators and mitigators through a process of dialectic reflection and reconciliation, has become a relic of the past. The creation of these guidelines involved the breakdown of behavior into smaller and smaller parts and categories of aggravators or enhancements without consideration of other important individual factors.

The ratcheting-up process in the instant case was all based upon judicial findings of fact. It is significant that in the recent cases, *Rita v. United States*, 127 S. Ct. 2456 (2007), *Gall v. United States*, 128 S. Ct. 586 (2007), and *Kimbrough v. United States*, 128 S. Ct. 558 (2007), in which the Supreme Court upheld the district court sentences, *the sentence was within or below the guideline range corresponding to the jury verdict or guilty plea.* There was no ratcheting up of the sentence by enhancements outside of the initial sentencing range. There were no judicial fact findings that raised the sentence, and I find no Supreme Court case that allows a court to make findings of fact of enhancements that raise a sentence above the guideline range corresponding to the jury verdict or plea. So when the Supreme Court uses the phrase "within the guidelines," as it does frequently in these cases, it is not clear that it means enhanced sentences based on findings of facts by the judge over and above the facts found by the jury verdict or the guilty plea.

The Supreme Court did not say in *Gall* or *Rita* that the sentencing judge should "start" the sentencing process by enhancing the sentence aggravator by aggravator, as happened in the instant case. The Court said that the sentencing judge should begin with the "applicable Guidelines range" which in *Gall* was the initial base offense level corresponding to facts admitted by the guilty plea, which carried a range of 30 to 37 months. There is no language in *Gall* or *Rita* that requires appellate or district judges to "begin" with the enhancement process. That process is directly contrary to the language quoted below in *Blakely* that a "judge exceeds his proper authority" by basing a higher sentence on judicial findings outside the jury verdict.

It is obvious to anyone who has watched this disingenuous process develop that the present system is completely inconsistent with the *Blakely* and *Booker* opinions, which confine judicial fact finding to those facts carrying out a jury verdict or plea of guilty. As the Court said in *Cunningham*, "under the Sixth Amendment, any fact that *exposes* a defendant to a greater *potential* sentence must be found by a jury, not a judge." *Cunningham v. California*, 127 S. Ct. 856, 863-64 (2007) (emphasis added). This statement of the Sixth Amendment rule was first stated in *Blakely* even more clearly and then repeated in *Booker* and *Rita*:

> [T]he '*statutory maximum' for Apprendi purposes* is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without any additional findings.* When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the

---

[1] The Commission's "not relevant" rule against consideration of a host of mitigating factors such as age, physical condition, education, employment, military, public service, good works, disadvantaged upbringing, addiction, mental illness, family ties, and rehabilitation possibilities are directly contrary to the Supreme Court's interpretation of the Eighth Amendment in *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982), requiring states in sentencing to consider such mitigating factors. The Sentencing Commission, and now the federal courts at its direction, refuse to take into account the mitigating and humanizing factors that *Lockett* and *Eddings* require. There is no indication that any such factors were considered or influenced the sentence in this case.

facts 'which the law makes essential to the punishment,' and the judge exceeds his
proper authority.

*Blakely v. Washington*, 542 U.S. 296, 303-04 (2005) (emphasis added). What is clear is that the district courts and the courts of appeals, as the majority in this case expressly acknowledges, are not applying this rule and do not believe the Supreme Court actually intends to enforce it. The view seems to be that the remedial opinion in *Booker* is inconsistent with this rule, and so the rule may be simply disregarded in practice.[2] Justice Scalia predicted such a result in *Booker*, noting that the Court's remedial scheme risked preserving "*de facto* mandatory guidelines by discouraging district courts from sentencing outside Guidelines ranges." *United States v. Booker*, 543 U.S. 220, 313 (2005) (Scalia, J., dissenting). Indeed, this *de facto*, mandatory application of the guidelines runs afoul of the Supreme Court's admonition that "*Booker*'s remedy for the Federal Guidelines . . . is not a recipe for rendering our Sixth Amendment case law toothless." *Cunningham v. California*, 127 S. Ct. 856, 870 (2007). Many of the members of the Supreme Court have recognized in opinions at one time or another the unprincipled, inconsistent  nature of the sentencing game in which we are now engaged.[3]

The only way to begin to return the process to something consistent with the Sixth Amendment and with the concept of individualized sentencing is to recognize and insist that we stick with two overriding principles: *First*, that judicial fact finding and the length of a sentence be limited somewhere within the base-offense-level, guideline range corresponding to the jury verdict or the plea, unless the sentencing judge explains why the concepts of general and individual deterrence should require a longer sentence for the particular individual and outweigh the mitigating circumstances of the case (including factors like age, addiction, and family responsibility deemed irrelevant by the Sentencing Commission in Chapters 5H and 5K), as well as the likelihood of successful rehabilitation. *Second*, that the sentencing judge explain the weighing process outlined above (taking into account moral culpability, general and special deterrence, mitigating circumstances and rehabilitation) so that the sentence and its explanation comply with the "overarching provision instructing district courts to 'impose a sentence . . . not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007) (quoting 18 U.S.C. § 3553(a)). This "overarching provision," enacted by Congress in § 3553(a), sets a humane, balancing standard that the sentencing judge should keep as the Golden Mean governing the judicial reflection necessary in each sentencing case to reconcile contrary factors and arguments in the weighing process in order to arrive at a fair sentence.

In other words, the sentencing judge should start with the base offense level corresponding to the facts found by the jury verdict or admitted by the guilty plea. The sentencing judge should not go up or down from that point unless in his or her own mind the weighing process of the two overriding principles stated above requires it. The judge should not engage in guidelineism,

---

[2] The empirical data on this point are clear. From 1990-2003, 90.6% of offenders received sentences adhering to the Guidelines range. In 2006, after *Booker* purportedly made the Guidelines "advisory," 86.3% of offenders still received sentences in the Guidelines range, a range including judicial enhancements. Furthermore, appellate review of these within-Guidelines sentences has not changed post-*Booker*, as circuit courts have affirmed 99.9% of within-Guidelines sentences. Conversely, Circuit courts reversed below Guidelines sentences almost 85% of the time, while only reversing above-Guidelines sentences in less than 5% of the cases. *See* James Bilsborrow, Note, *Sentencing Acquitted Conduct to the Post-Booker Dustbin*, 49 WM. & MARY L. REV. 289, 314-15 (2007).

[3] See, for example, the separate opinions of Justice Stevens ("I am not blind to the fact" that "many federal judges continue to treat the Guidelines as virtually mandatory"); Justices Scalia and Thomas, ("no one knows — and perhaps no one is meant to know — how advisory Guidelines . . . will function in practice"); Justice Souter ("consistency began to falter," the "gravitational pull to now-discretionary Guidelines . . . preserve the very feature . . . that threaten to trivialize the jury right" so that it is "fair to ask just what has been accomplished"). *See Rita*, 127 S. Ct. 2456, 2474, 2475, 2487-88.

adjusting the sentence up or down just because the guidelines say so, as occurred in the instant case, but rather because the judge's own sense of justice, upon reflection, leads to a different result than the beginning, base-offense level. This allows the guidelines to play a pivotal role to begin with but requires the judge to use his or her own mental faculties and best judgment, just as judges did in the days of indeterminate sentencing before the mandatory federal sentencing guideline era.

The job of the Court of Appeals should be only to see that the federal sentencing judge (1) starts at the right place in the reasoning process (at the base offense level corresponding to the jury verdict or guilty plea), as required by the Sixth Amendment as interpreted by *Blakely* and *Booker*, and (2) engages in a general process of serious dialectical reflection and reconciliation, as evidenced by the reasons given for deviating from the starting point established under Sixth Amendment constraints. This process should put an end to the rote, ratcheting-up process that now characterizes the sentencing process, a process based on the Commission's rule that mitigating factors are "not relevant."

This modified system based on these two principles is, more or less, what the system would have looked like in the beginning if the Guidelines were truly "guidelines" rather than mandatory rules. If the Commission, in the beginning, as many judges and lawyers recommended, had adopted guidelines to assist judges rather than to discipline and correct judges this modified system would have perhaps provided a workable system. I myself testified before the Commission advising it not to saddle the judiciary with mandatory rules that are constitutionally suspect because such rules would most likely eliminate individualized sentencing and full consideration of mitigating factors. The Commission, however, believed that federal judges could not be trusted to exercise discretion properly and that harsher sentencing rules must be imposed on judges in order to insure longer sentences and collective uniformity. The current Guidelines that ratchet up sentences without considering mitigating factors or rehabilitation are the result.

The modified system described above is a different process of sentencing from either pure indeterminate sentencing, as it operated before the guidelines, or the mandatory, rote guideline process that prevailed before the Sixth Amendment was recognized as a limitation on fact finding. Hopefully, such a modified system would begin to provide a balance between the collectivized, sentencing process of lock-step, upward adjustments heretofore required by the Commission, and the thoughtful individual sentencing by federal judges that was the ideal behind the federal sentencing system used so effectively (in my opinion) for 200 years since the first Congress enacted the first sentencing law, 1 Stat. 112, ch. 9 (1790). The system of jury fact finding and individualized sentencing by judges enacted by the First Congress was the system developed to reconcile justice with mercy by our judicial forebearers as the English system of criminal law — developed particularly after the demise of the prerogative courts of Star Chamber and High Commission following the English civil war, the Glorious revolution of 1688, the English Bill of Rights of 1689, and the creation of an independent judiciary in the Judges' Bills of 1692 and 1701. *See* Harold J. Berman, *Law and Revolution II, The Impact of the Protestant Reformation on the Western Legal Tradition*, 226-28, 306-29 (Harvard Univ. Press 2003); Blackstone, *Commentaries on the Laws of England, Book IV*, Chap. 29, 368-82 (Legal Classics Library Ed. 1983). The Sentencing Guidelines removed individualized sentencing by judges that had existed in Anglo-American law for more than three centuries.

Further, a system that incorporates facets of indeterminate sentencing preserves the historical role of judges as sentencing experts and the jury as fact finder. Sentencing procedures based on these roles were never challenged as undermining the Sixth Amendment's or Article III's right to a jury trial because judges did not function as objective fact finders and judge-found facts did not carry determinate consequences.

Such a modified system includes an element of democratic, legislative control over sentencing while keeping elements of individualized sentencing from the old system. Such a modified system will be strongly resisted by prosecutors and the Department of Justice officials who have now become accustomed to controlling sentencing through the charging process, the release of enhancement information to probation officers and plea bargaining. Back in my day as U.S. Attorney 40 years ago, prosecutors were viewed solely as parties to the case and not entitled to control the length of the sentence. Removing control of sentencing from the prosecutorial arm of the government should be viewed as a step forward, although it is in reality a step back in history to restore the benefits of individualized sentencing practiced by English and American judges since the beginning of the 18th Century.

The modified scheme proposed above squares with the most recent Supreme Court decision, *Gall v. United States*, 128 S. Ct. 586, 597 (2007), in which the Court instructed district court judges to "make an individualized assessment based on the facts presented" with the Guidelines operating as the "initial benchmark" but "not the only consideration." In *Gall,* the Supreme Court affirmed the district court's sentence of thirty-six months probation, a punishment based upon the district judge's individualized evaluation of the factors under 18 U.S.C. § 3553(a) — particularly rehabilitation — and rejected the appellate court's rote application of the Guidelines. Moreover, this approach lessens the likelihood of as-applied Sixth Amendment challenges, which, as Justice Scalia points out, are still available. *Id.* at 602 (Scalia, J., concurring). Unfortunately, the sentencing process in this case was just a repeat of guidelinitis, the system of rote sentencing in which the sentencing judge ratchets up the sentence instead of engaging in anything close to the deliberative or reflective process outlined by the two overriding principles stated above. The reviewing panel just goes along with the guideline program. Here both courts have simply, as the District Court candidly admitted but as the panel majority seems to want to deny, "deferred to the pronouncements of the Sentencing Commission through the sentencing guidelines." (See footnote 1, *supra*.) The "irony" or paradox that my colleagues mention at the end of their opinion is really that the so-called major changes in law wrought by *Blakely* and *Booker* have, as Justice Souter suggests in *Rita*, "accomplished" nothing. See footnote 3, *supra*.

Hence, I would reverse and remand the case for resentencing in compliance with the two overriding principles stated above. The sentencing court should start with the guideline sentence corresponding to the jury verdict, take a look at how the guidelines would operate from that point and then engage in the weighing and explanatory process outlined above without feeling an obligation to reach a result consistent with the Commission's guideline structure or policies. After finding the beginning guideline sentence, it is up to the judge to act like a common law judge of old engaged in the same process that prevailed in Anglo-American criminal law for 300 years before the failed, 20-year experiment in mandatory guideline sentencing.