WILLIAMS, Senior Circuit Judge,
dissenting:
Happily for the United States, most people pay their taxes. More happily, most pay out of a sense of conscience and perhaps even public spirit (plus IRS collection of W-2s and 1099s), with the threat of fines and prison only rather remotely in the back of their minds. There is, however, a set of taxpayers for whom these motives are not strong enough to overcome the advantages of cheating. Defendant Gardellini is one of them.
By means of offshore accounts, Gardelli-ni deliberately avoided income tax on capital gains from real estate, on ordinary income from the exercise of stock options, and on interest from those accounts, inflicting a $94,000 revenue loss on the Treasury. He is not alone. The IRS estimates that tax fraud on individual income tax returns generates revenue losses of about $197 billion a year (not counting $25 billion in losses from nonfiling). Internal Revenue Service, Reducing the Federal Tax Gap: A Report on Improving Voluntary Compliance 10 (Aug. 2, 2007), http://www. h’S.gov/pub/irs-news/tax_gap_report_iinal_ 080207_linked.pdf (2001 tax year). Nonetheless, in sentencing Gardellini, the district court gave no weight to one of the goals stated by 18 U.S.C. § 3553(a)(2)(B): deterring others from committing similar crimes. As a result, whereas the Sentencing Guidelines set a range of 10-16 months imprisonment, the court sentenced Gardel-lini to probation and a $15,000 fine. (The probation, I should note, will be served in Belgium, where his wife is an EU official. He will thus not be subject to the usual restrictions inherent in probation, such as susceptibility to searches, which the Supreme Court has found important in evaluating the reasonableness of a probation sentence. See Gall v. United States, — U.S. --, 128 S.Ct. 586, 595-96, 169 L.Ed.2d 445 (2007).) I believe disregard of the deterrence factor was an abuse of discretion and would therefore reverse and remand for resentencing.
On appeal no presumption of reasonableness or unreasonableness governs a non-Guidelines sentence, id. at 597; we review for abuse of discretion and owe the district court’s judgment no more than “due deference,” id. Review here might be complicated by the government’s apparent renunciation at oral argument of any claim of procedural irregularity. Tr. of Oral Arg. at 8. There is (for me at least) some obscurity in the Supreme Court’s division of grounds for reversal into procedural and substantive categories. Compare Gall, 128 S.Ct. at 598 (considering as a possible procedural error a district judge’s alleged failure “to give proper weight” to a mandatory § 3553 factor), with id. at 601 (considering as a possible substantive error a district judge’s alleged giving of weight to an improper factor). But the distinction is irrelevant here. Whatever counsel may have meant, he clearly did not intend to throw away the government’s opening contention — challenging the district court’s treatment of the deterrence goal — which occupied about *1098 four of the 13 pages of its opening briefs “Argument” section.
Although imprecise, the abuse-of-discretion standard is no mere rubberstamping. At a minimum, it includes making sure the district judge “considered] all of the § 3553(a) factors to determine whether they support the sentence requested by a party.” Id. at 596. When the district court’s sentence is outside the advisory Guidelines range, as here, our job is to review the sentence under “the totality of the circumstances,” giving “due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance.” Id. at 597. Given the Gall Court’s careful examination of the government’s claims of erroneous factor weightings, see id. at 600-01, the panel’s formulation of our appellate role — to determine whether “[i]n light of the facts and circumstances of the offense and offender, is the sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court,” Maj. Op. at 1093 —may be too narrow.
Here the district court appeared to deny any weight to the statutory goal of deterring others from the commission of similar crimes. 18 U.S.C. § 3553(a)(2)(B); see United States v. Phinazee, 515 F.3d 511, 515-16 (6th Cir.2008) (explaining that deterrence within the meaning of § 3553(a)(2)(B) encompasses deterrence not only of the defendant but also of others).
As it does in this court, the government at sentencing advocated a within-Guidelines term of imprisonment as a means of deterring others from committing similar crimes. Defense counsel recognized that the deterrence goal presented a problem, acknowledging that “[t]he only factor that ... is at all persuasive in the government’s argument about why there should be a sentencing guideline range sentence here[ ] is the one of deterrence.” Appendix (“App.”) 119. Consequently, defense counsel set out to “undermine[ ] the government’s argument about deterrence,” explaining that “if you take away that argument on deterrence, if you balance the [remaining] 3553 factors, a probationary sentence is entirely reasonable.” Id. at 120.
The district court was evidently convinced that you could “take away” deterrence, saying:
The deterrence, it’s not so much the sentence that this court imposes — frankly, I don’t — you know, maybe this will get a lot of press, I don’t know, I doubt it. But what really deters is the efforts of prosecutors like this Assistant U.S. Attorney in vigorously enforcing the laws of the country, particularly in these tax cases.
App. 136. In Gardellini’s non-newsworthy case, accordingly, the court effectively dismissed the deterrent effect of a sentence as irrelevant.
But deterrence is a primary consideration in choosing the appropriate sentence for any tax crime, newsworthy or not. As the Guidelines explain,
Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.
U.S. Sentencing Guidelines Manual ch. 2, pt. T, introductory cmt. (2007) (same language as in the 2000 edition, which was used to calculate Gardellini’s advisory sentencing range).
The Guidelines’ generalization is quite sound. The resources available for tax enforcement are scarce and the probability of getting caught is low. In fact, for fiscal year 2007, the IRS audited only 1.03% of all individual returns. Internal Revenue *1099 Service, Fiscal Year 2007 IRS Enforcement and Service Statistics 3, http://www. irs.gov/pub/irs-news/irs_enforcement_and_ service_tables_fy_2007.pdf. The IRS understandably doesn’t publish its criteria for singling out returns that it will audit. Though Gardellini’s income probably gave him a more-than-average likelihood of an audit, the chance was still quite low. See id. at 4 (reporting the audit statistic for those with incomes exceeding $100,000 and $200,000 as 1.77% and 2.87%, respectively). Assuming an audit risk of 3%, the $15,000 fíne imposed had an ex ante expected value of less than $500; taxpayers who are tempted to cheat, and who observe Gardel-lini’s treatment, will find the risk-reward ratio very attractive.
In addition, Gardellini used offshore accounts to completely conceal his liability-generating transactions. Thus, nothing in the nature of what he disclosed gave an eye-catching, audit-eliciting quality to the returns covering his four years of tax fraud. And even if the IRS had audited his returns, it was far less likely to know about unreported capital and ordinary gains, and interest income, than in cases (for example) of interest from domestic accounts, of which the IRS learns via required disclosures from the payors themselves. Here, as the government explained at sentencing, it “learned about Mr. Gardellini’s foreign bank account only because of an execution of a search warrant in an unrelated case.” App. 103. In other words, Gardellini’s crime surfaced solely because he had engaged in financial transactions with somebody already under the tax authorities’ suspicion.
The district court’s explanation for disregarding deterrence under § 3553(a)(2)(B) is at odds with the overall sentencing scheme. Under Gall a district court judge is obliged to “explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications.” Gall, 128 S.Ct. at 594. The duty of explanation, Gall reasoned, is “to allow for meaningful appellate review and to promote the perception of fair sentencing.” Id. (emphasis added); see also In re Sealed Case, 527 F.3d 188, 191 (D.C.Cir. 2008) (quoting this language). The Court in Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), also notes this link between judicial explanation and public “perception,” observing: “Confidence in a judge’s use of reason underlies the public’s trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates the trust.” Id. at 2468.
The obvious premise here is that members of the public get word of what goes on at sentencing. We may assume that, as is common in criminal sentencings, there was no press coverage of Gardellini’s proceedings, and that the courtroom audience was thin. But we have no real knowledge about how information travels in the relevant audience — those inclined toward tax cheating and seriously concerned at the margin with the potential criminal consequences. Moreover, the district court’s reliance on the absence of press coverage has a troublesome flipside: if its logic is accepted, courts must give deterrence a hefty weight for notorious defendants — as we may be sure that word of their sentenc-ings will get out — but only for such defendants.
If, as the Supreme Court tells us, the explanation duty is motivated in part by concern for public perceptions, surely a district court cannot assume those perceptions away as a basis for ditching a § 3553 factor. But that is precisely what the majority’s holding allows.
It may be that after Kimbrough v. United States, — U.S.-, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), the district court may *1100 excise a § 3553 factor from the mix on policy or philosophical grounds. See id. at 574-75, 128 S.Ct. 558 (leaving the matter open). And basing a person’s punishment on that punishment’s impact on other people indeed raises ethical issues. See, e.g., James B. White, Making Sense of the Criminal Law, 50 U. Colo. L.Rev. 1, 26 (1978). But such a reasoned philosophical viewpoint is quite different from zeroing out deterrence on the basis of reasoning that is inconsistent with the Supreme Court’s vision of the scheme as a whole.
Thus, pace the panel opinion, it is not enough to say that “the District Court did consider the goal of deterrence, expressly noting that that factor did not weigh heavily in this case.” Maj. Op. at 1094-95 n. 6. In light of the district court’s explanation, giving deterrence no weight at all amounted to an unreasonable weighing of the sentencing factors. We therefore cannot make a statement paralleling that of the Supreme Court in Gall — that the district court “quite reasonably attached great weight” to a particular factor, 128 S.Ct. at 600; the district court did not “reasonably attach” great weight to the emptiness of the courtroom and lack of press coverage, and thus no weight to the interest in deterrence.
The district court’s decision was a textbook example of an abuse of discretion, making Gardellini’s sentence substantively unreasonable. I respectfully dissent from the majority’s contrary conclusion.