NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0250n.06

Case No. 22-3732

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 01, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| MATTHEW LUCARELL, | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | OPINION |

Before: MOORE, McKEAGUE, and MATHIS, Circuit Judges

**MATHIS, Circuit Judge.** Matthew Lucarell appeals his below-Guidelines sentence after pleading guilty to receipt and distribution of visual depictions of minors engaged in sexually explicit conduct, possession of child pornography, and multiple counts of sexual exploitation of children. Lucarell argues that his 360-month sentence is substantively unreasonable. For the reasons below, we affirm.

**I.**

On March 1, 2021, law enforcement officers initiated an investigation into Lucarell after receiving "13 cybertips regarding online enticement and suspected child pornography files." R. 40, PageID 344. The investigation revealed that between June 9, 2017, and September 22, 2021, Lucarell changed his email over 14 times; switched usernames, which included "Summer lifeee" and "Lol School sucks;" downloaded multiple child-pornography images; and uploaded images to

YouTube, making them accessible to members of the public. *Id.* at 345. His victims' ages ranged from five to thirteen and included family members he babysat.

On April 1, 2021, officers executed a search warrant at Lucarell's residence during which officers seized five cellphones, three multi-media cards, and two digital cameras. The search also uncovered two hidden cameras, equipped with remote controls and antennas, in two shampoo bottles in his bathroom. A forensic analysis revealed that of approximately 1,215 images found on Lucarell's seized cellphones, 811 included images of child pornography. The analysis uncovered video files involving child pornography found on the electronic devices seized from Lucarell. Officers also recovered video clips of a victim using Lucarell's bathroom during the forensic examination of the cameras found hidden in the shampoo bottles. The investigation further revealed that Lucarell had instructed a ten-year-old victim he messaged on YouTube to upload videos of his genitals and threatened to harm the victim's family if he did not do so. Lucarell directed the ten-year-old victim to watch "inappropriate stuff" on a pornographic website. *Id.* Lucarell also posted various lewd comments on YouTube videos uploaded by the ten-year-old victim, after which the victim uploaded a video inserting objects into his rectum.

A grand jury returned a six-count indictment charging Lucarell with: (1) four counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) and (e); (2) receipt and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2); and (3) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(b). Lucarell pleaded guilty to all counts without a plea agreement. Lucarell's advisory Guidelines range was 1,920 months' imprisonment—effectively a life sentence.

At sentencing, Lucarell urged the court to view his repetitive offense conduct as a "sickness." R. 48, PageID 463. Ultimately, Lucarell asked the court to impose a 240-month

sentence because he believed such a sentence was "sufficient to protect the community, but it's also not more than what's necessary for that purpose." *Id*. at 465. In pronouncing the sentence, the district court explained that the sentence it would impose would "afford just punishment for these offenses and the devastation to the victims in this matter," as well as "adequate deterrence, generally and specifically," and "protect the public from future crime by this defendant, particularly the most vulnerable in our society." *Id*. at 477. The district court also noted the need for the sentence "to reflect the seriousness of the offenses" and "improve the offender's conduct and condition." *Id*. at 477–78. In addition to recognizing that there was a need for deterrence and rehabilitation for Lucarell, the district court explained that "the main sentencing goal in this case [was] to protect the public, . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment." *Id*. at 478. After weighing the sentencing factors, the court imposed a 360-month sentence, the statutory maximum for the sexual exploitation of children charges. This appeal followed.

## II.

Lucarell's sole argument on appeal is that his below-Guidelines sentence is substantively unreasonable because the district court's "failure to provide established mitigating factors the weight deserved resulted in a sentence that was 'greater than necessary' to comply with the purposes of [18 U.S.C.] § 3553(a)."

We review a sentencing challenge for reasonableness under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A defendant's claim that a sentence is substantively unreasonable "is a claim that a sentence is too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). This inquiry considers whether "the court placed too much weight on some of the § 3553(a) factors and too little on others." *Id*. "This court applies a

rebuttable presumption of substantive reasonableness to a within-guidelines sentence." *United States v. Cruz*, 976 F.3d 656, 664 n.3 (6th Cir. 2020) (quoting *United States v. Wandahsega*, 924 F.3d 868, 890 (6th Cir. 2019)). "Accordingly, a defendant's burden of demonstrating that his below-guidelines sentence is unreasonably long is even more demanding." *United States v. Fields*, 763 F.3d 443, 455 (6th Cir. 2014) (internal citations and quotation marks omitted).

Lucarell's 360-month sentence was below the advisory Guidelines range. Thus, a presumption of reasonableness applies, and we must determine whether Lucarell has rebutted the presumption.

Lucarell argues that the district court placed too little weight on his history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Specifically, Lucarell contends that the district court should have placed more emphasis on his mental health challenges, in particular his autism diagnosis, and his military service. Lucarell suggests that "without giving any weight let alone deserved weight to the factors in mitigation available in the record in the court's sentencing evaluation, [the district court] failed to arrive at a 'just punishment.'"

We disagree. The record reflects that the district court considered the relevant sentencing factors. In considering the relevant sentencing factors, the district court first addressed the nature and circumstances of the offenses, characterizing them as "horrendous." R. 48, PageID 471. Three of Lucarell's victims were his young relatives and the fact that he "went beyond just viewing any kind of child pornography but actually taped them, . . . indicates that these offenses are of utmost seriousness and have an extremely terrible impact on these victims and their family members." *Id.* at 468–69. Additionally, the court noted the disturbing requests he made of the ten-year-old victim.

In considering Lucarell's history and characteristics, the district court observed that while Lucarell had no prior criminal convictions, by his own admission during his assessment, he began

viewing pornography when he was 12 years old. At the time of sentencing, Lucarell was "[42 years old] and there's no indication that he stopped and, in fact," the court "[did not] believe he could stop," given the fact that he also admitted that he viewed child pornography as a coping mechanism. *Id*. at 471–473.

Contrary to Lucarell's contention that the district court failed to consider his autism diagnosis, the record indicates that the district court considered the evidence provided in support of Lucarell's assertion that his autism diagnosis was a mitigating factor in determining his sentence. The district court considered the forensic evaluation report submitted by Lucarell's expert, Dr. Adriana Flores. The district court expressly referenced the expert's report, recognizing that the report explained that "[e]vidence suggests that individuals with autism are no more likely to commit crime than the general population." *Id.* at 475. Based on the evidence before the district court, there was "nothing specific about autism that causes people to commit crimes" and "the vast majority of individuals with [autism] do not commit crimes." *Id*. at 475–76. The district court further noted that "it has been posited—not proven, not studied in any great fashion—that individuals with [autism] who offend may have a greater proclivity for cyber-dependent crime." *Id*. at 476. The court also considered Lucarell's argument that individuals with autism resort to exploring pornography to explore their sexuality; however, the court noted that "doing so in an adult population is different than child pornography because these victims are minor children." *Id*. And based upon the information at the court's disposal, the court found that Lucarell "knew it was wrong, and he did it anyway." *Id*.

Beyond Lucarell's autism, the court also acknowledged Lucarell's other mitigation arguments, including the abuse Lucarell endured from his father, his mother's mental illness

history, and bullying in his childhood, among other things. The district court also discussed Lucarell's military service.

The district court discussed the need for the sentence imposed to "afford just punishment for these offenses and the devastation to the victims in this matter" and to provide "adequate deterrence, generally and specifically." *Id.* at 477. Moreover, the court recognized the need to "protect the public from future crime by this defendant, particularly the most vulnerable in our society, which are minors, which are children. In this case, 5, 7, 10, 13. Babies." *Id.* Prior to pronouncing Lucarell's sentence, the district court acknowledged that Lucarell requested a 240-month sentence but found it insufficient under the circumstances.

All in all, the district court did not abuse its discretion in sentencing Lucarell. We have held that it is not our role "to decide afresh whether [a defendant's] circumstances warrant a larger variance or whether the sentence is reasonable." *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008) (citing *Gall*, 552 U.S. at 59). Rather, to reverse a sentence, we must "conclude that, taking into account 'the totality of the circumstances,' the sentence imposed was 'greater than necessary' to achieve the goals of § 3553(a)." *Fields*, 763 F.3d at 456 (quoting *United States v. Tristan–Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010)). The district court balanced the sentencing factors and made a "reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *United States v. Lynde*, 926 F.3d 275, 282 (6th Cir. 2019) (quoting *Gall*, 552 U.S. at 59–60). Based on the totality of the circumstances and the relevant § 3553(a) sentencing factors, Lucarell's sentence is substantively reasonable.

Lucarell has failed to rebut the presumption of reasonableness attached to his below-Guidelines sentence. Essentially, Lucarell wanted the district court to balance the § 3553(a) factors differently to reach his desired result—a 240-month sentence. But that "is simply beyond the

scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quotation omitted).

## III.

For these reasons, we **AFFIRM**.