NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0551n.06
Filed: September 5, 2008

No. 07-3988

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

YU LIN,

    Petitioner,

       v.

MICHAEL B. MUKASEY, Attorney General,

    Respondent.

On Petition for Review of an
Order of the Board of
Immigration Appeals

_____/

**Before:**    **GUY, BATCHELDER, and McKEAGUE, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    Petitioner Yu Lin seeks review of the final order of the Board of Immigration Appeals (BIA) dismissing her appeal from the Immigration Judge's (IJ) decision denying her application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). In this appeal, petitioner challenges the BIA's finding that the record supported the IJ's adverse credibility determination, and argues for remand to the BIA on the grounds that the record is incomplete. After review of the record and the applicable law, we deny the petition for review.

**I.**

Lin, a native and citizen of China, entered the United States on April 4, 2005. She gave a sworn statement to an asylum officer at Los Angeles International Airport that day, and underwent a "credible fear" interview on April 8, 2005. On both occasions, Lin said she came to the United States because she was a Falun Gong practitioner and feared that she would be harmed if she returned to China. Lin stated that she had no relatives in the United States, and that she lost her Chinese passport while in transit. Lin stated during the credible fear interview that she had become a Falun Gong practitioner in April 2004, but she was unable to give many specifics about the religion. Lin also reported that she had one brother and one sister. The Department of Homeland Security served petitioner with a Notice to Appear charging her with removability as an alien not in possession of valid entry and travel documents, which she would later concede. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I).

On October 19, 2005, Lin filed an asylum application contradicting her earlier claim and explaining that "Mr. Zhang," the "snakehead" who helped her, told her to say that she was a Falun Gong practitioner so she could stay in the United States.[1] Instead, Lin asserted a claim of persecution based on her opposition to China's coercive family-planning policies. Specifically, Lin attested that the Chinese government required unmarried females over the age of 18 to report for a physical examination every six months to check for pregnancy and sexual activity. If pregnant, the unmarried woman would be forced to have an abortion. Failure to appear would result in monetary penalties, which, if not paid, could result in the denial of the necessary certificates to marry, work, go to school, or live in a city other than

---

[1] "Snakehead" usually refers to a Chinese smuggler who gets people out of China for a fee. Petitioner testified that her parents paid Zhang $70,000 to help her enter the United States.

her home village. Lin stated that she missed an exam in 2000, and her parents raised the money to pay the fine of 5,000 yuan (or $687). She also "missed 1-2 additional exams in 2001 and 2002," but was unable to pay the penalties. As a result, Lin was denied the certifications that would allow her to work legally, to marry, or to live or work outside her home village. She stated that her registration was cancelled and that she could be arrested for failing to pay the fines.

Lin further stated, in contrast with her earlier statements, that she had three sisters and one brother and that she was the second oldest of the five children. She wrote that her mother, while pregnant with her fourth child, received official notice requiring her to report for an abortion and sterilization. When her mother did not report, government officials came to their home and tried unsuccessfully to drag her out. A few days later, government officials returned with sledgehammers and smashed their home and belongings. The family fled to another province, but left petitioner's older sister, Quing Lin, to live with an aunt. According to petitioner, the sister told her that government officials came looking for their parents and told her that she would not qualify for high school because her parents did not obey the "one family one child" policy.

Petitioner's asylum hearing was held on March 29, 2006, the same day as the hearing on the asylum application of her older sister Quing Lin.[2] The IJ noted his familiarity with the sister's testimony, acknowledged that both sisters' claims were based on fear of persecution for opposition to China's coercive "pregnancy check" policies, and accepted the

---

[2]The record indicates that Quing Lin entered the United States illegally one month before petitioner.

request that the sister's testimony be transcribed and made part of the record in petitioner's case.[3] In an oral decision at the conclusion of the hearing, the IJ found that, unlike the sister, petitioner was not credible. As a result, the IJ denied petitioner's application for asylum, withholding of removal, and protection under the CAT.

Petitioner's timely appeal was dismissed by the BIA, which explained that the IJ properly based the adverse credibility determination on discrepancies between petitioner's initial statements and her testimony before the immigration judge. The BIA found that the noted discrepancies constituted significant evidence of a lack of credibility, that the IJ's adverse credibility determination was not clearly erroneous, and that petitioner failed to meet her burden of proof for asylum, withholding of removal, or relief under the CAT. This timely petition for review followed.[4]

**II.**

**A.     Asylum and Withholding of Removal**

When the BIA adopts the IJ's reasoning, this court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). We review the legal determinations made by the IJ or BIA *de novo*, but review the factual findings for substantial evidence. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). Credibility determinations—which are the focus of this appeal—are considered to be findings of fact that are reviewed under the substantial evidence

---

[3]The fact that the sister's testimony is not part of the record is the basis for petitioner's request for remand to the BIA.

[4]Lin has abandoned her claim for protection under the CAT in this appeal.

standard. *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Such findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Under this standard, the decision of the IJ or BIA should be upheld unless the evidence not only supports a contrary conclusion, but compels it. *Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004).

Resolution of a request for asylum involves a two-part inquiry, under which the petitioner must show that she qualifies as a "refugee" and that she merits a favorable exercise of discretion. *Id*. at 702. A "refugee" is defined as an alien who is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The definition further provides, in pertinent part, that a person who has been persecuted for "resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion." *Id*. at § 1101(a)(42)(B).

"The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a). "When an IJ determines that an alien's testimony lacks credibility, the IJ must include in his or her decision 'specific reasons' explaining why the IJ reached such a conclusion." *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005). We have also held that an adverse credibility finding must be "based on issues that go to the heart of the applicant's claim." *Sylla*, 388 F.3d at 926. This requirement has been modified, however, by provisions of the REAL ID Act of 2005, which apply to this case

because petitioner filed her application after the effective date of May 11, 2005. 8 U.S.C. § 1158(b)(1)(B)(iii) (as amended by REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 May 11, 2005); *see also Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006). Under the applicable standards, the factfinder may base a credibility determination on "all relevant factors," including "any inaccuracies or falsehoods in [the applicant's] statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii) (as amended).[5]

Given petitioner's admission that she "did not tell the truth" in the statements taken at the airport or during the credible fear interview that followed several days later, credibility was the central focus of the hearing before the IJ. Petitioner testified that she had lied because "Mr. Zhang" told her to, and argues that the IJ failed to assess the adequacy of this explanation. On the contrary, the IJ considered the explanation and found it lacking:

> In this case, [petitioner] testified that she was told by Mr. Zhang, who the Government correctly pointed out on closing argument is not available for cross-examination, to tell officers of the United States Government that she feared returning to China because she was a practitioner of Fal[un] Gong. [Petitioner] made that statement not once but twice, to the officer at the airport and then again after she had had a chance to rest and compose herself some four days later in the interview with the asylum officer. Indeed, it was at this second interview that respondent fleshed out, so to speak, her Fal[un] Gong case by saying that she had been a member . . . since April 2004 and she was a member . . . to improve her health.

---

[5]Other "relevant factors" include: the petitioner's demeanor, candor, or responsiveness; the inherent plausibility of her account; the consistency between her statements, oral or written, regardless of when they were made or whether they were taken under oath; and the consistency of those statements internally and with other evidence in the record. 8 U.S.C. § 1158(b)(1)(B)(iii). The provisions governing credibility determinations with respect to the withholding of removal were similarly modified by the REAL ID Act. 8 U.S.C. § 1229a(c)(4)(C) (as amended).

> . . . [I]n light of the circumstances under which these statements were made, the court finds that [petitioner] is not credible. [She] has established that she will say pretty much anything to be granted asylum and to remain in the United States. Her explanation that Mr. Zhang told her to say one thing but she is telling the truth today is not availing. Mr. Zhang is not available for cross-examination and indeed the explanation [she] gives pins all of the blame on the mysterious and non-present Mr. Zhang.
>
> This explanation is particularly unavailing when viewed in the light of her sister's application and testimony earlier in the afternoon. Her sister based her claim throughout the proceedings and before the Asylum Office on her opposition to the coerced family planning practices of the Chinese government. There was no need for this [petitioner] to lie if she really feared returning to China because of her opposition to coerced family planning yet she did so on two separate occasions and in situations when she was assisted by an interpreter and had time to reflect about the wrongness of lying to immigration officials.

The IJ found, notwithstanding the "congruence" of petitioner's claim with her sister's, that petitioner's claim had no reliability. Finding that petitioner was not credible, the IJ concluded that petitioner failed to meet her burden of proof on any of her claims.

We find that, under these circumstances, the IJ was entitled to rely on the admitted falsehoods and material inconsistencies in petitioner's statements to make an adverse credibility determination. Indeed, the IJ recognized that it was particularly convenient for petitioner to blame "Mr. Zhang," who could not be cross-examined. Keeping in mind our standard of review, the IJ's adverse credibility determination is conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." Petitioner has not demonstrated that a reasonable factfinder would be *compelled* to accept her explanation for lying about the basis for her claims and find her to be credible.

Finally, an applicant seeking withholding of removal has to meet a more stringent

burden of proof, which requires that she establish a clear probability that she would be subjected to persecution if forced to return to her home country. *Mikhailevitch*, 146 F.3d at 391. As a result, an applicant who fails to show eligibility for asylum necessarily does not qualify for withholding of removal. *Singh*, 398 F.3d at 401.

**B.     Remand**

In a further assignment of error, petitioner argues for remand to the BIA so that the transcript of the proceedings in the case of petitioner's sister could be made part of the record in this case. To be sure, the IJ granted the request that the record in this case include the transcript of the hearing in petitioner's sister's case. There seems to be no dispute that the government failed to meet its obligation to prepare a reasonably accurate and complete record of the removal hearing on appeal to the BIA. *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). As in *Sterkaj*, however, we lack jurisdiction to consider this claim because petitioner did not raise this issue before the BIA. In that case, we explained that: "Although an alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges), the alien must raise correctable procedural errors to the BIA." *Id.*; *see also Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004)).[6]

The petition for review is **DENIED**.

---

[6]We further note that to establish a due process violation requires proof of both an error and substantial prejudice. *Sterkaj*, 439 F.3d at 279 n.2. We have held that a petitioner who claims that the government provided an inaccurate or incomplete record must show that a complete and accurate record would have changed the outcome of the case. *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241-42 (6th Cir. 2007). Petitioner has not attempted to make this showing, but asserts generally that the sister's testimony would be relevant because her apparently successful claim for asylum also claimed persecution for opposition to the same coercive family-planning policies. There is no suggestion in petitioner's arguments here, or before the BIA, that petitioner's sister would have corroborated petitioner's own claim of persecution.