**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0275n.06**
**Filed: April 9, 2009**

**No. 08-3138**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| YANG LIN, | ) | |
| | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF |
| | ) | AN ORDER OF THE BOARD OF |
| ERIC H. HOLDER, JR., UNITED STATES | ) | IMMIGRATION APPEALS |
| ATTORNEY GENERAL, | ) | |
| | ) | |
|     Respondent. | ) | |

Before:      BOGGS, Chief Judge; and GILMAN and ROGERS, Circuit Judges.

PER CURIAM.  An Immigration Judge (IJ) denied Yang Lin's applications for asylum and for withholding of removal under the Immigration and Nationality Act (INA), and application for protection under the Convention Against Torture (CAT).  In particular, the IJ made an adverse credibility finding against Lin and found that his evidence did not establish a well-founded fear of future persecution.  While Lin's case was pending before the Board of Immigration Appeals (BIA), Lin moved to remand his case to the Immigration Court so that he could argue that changed personal circumstances gave rise to an objectively reasonable fear of future persecution.  The BIA issued an order affirming and adopting the IJ's decision and found that Lin's additional evidence was insufficient.

In this appeal, Lin seeks review of the IJ's decision as supplemented by the order of the BIA. For the reasons discussed below, we dismiss Lin's petition for review of the denial of his applications for asylum, withholding of removal, and protection under CAT. We further hold that the BIA did not abuse its discretion in denying Lin's motion to remand.

I

Petitioner is a native and citizen of the People's Republic of China (PRC), who last arrived in the United States on February 2, 2001. Department of Homeland Security (DHS) officials stopped him at the airport and placed him in removal proceedings. The Immigration and Naturalization Service (INS) issued Lin a Notice to Appear on February 23, 2001, charging him with being subject to removal from the United States for applying for admission when not in possession of a valid travel or entry document. INA § 212(a)(7)(A)(i)(I). Lin admitted the factual allegations and conceded removability at a Master Calendar hearing on December 13, 2001.

An individual merits hearing was held on June 26, 2006. Through an interpreter, Lin testified about problems he had with the Chinese government prior to his entry into the United States. Lin was born in Fuzhou, which is in the Fujian province. He and his family subsequently moved to Guan Tou, also in the Fujian province, which petitioner describes as a "village in the area of Fuzhou City." Lin's application for asylum is based on two purported encounters with authorities that took place in Guan Tou.

The first, Lin testified, occurred on March 3, 1999 while he was working at his father's bookstore located on a main street of Guan Tou. According to his written statement and testimony, police officers searched the store and arrested him after they found Falun Gong books. Lin said he

was detained for two days at the local police station when authorities released him with instructions

to tell his father to report to the station. Instead, Lin testified, they closed the bookstore and Lin fled

to his aunt's residence in Sheng Chun, which he said takes "[a]bout four-and-a-half hours by car."

Lin said that he returned home to Guan Tou a year later in April 2000, because he believed enough

time had passed that it was safe.

Later that year, Lin had another run-in with authorities. Lin testified that he attempted to

register his marriage with Chinese authorities, but they refused to register his marriage on the grounds

that both he and his wife were below the legal age.[1] He and his girlfriend nevertheless proceeded with

a traditional ceremony on September 25, 2000, a ceremony that Lin claimed two police officers

interrupted. According to Lin, the officers told them to appear at the Family Planning Office with a

marriage certificate and birth permit within two days. Two days after their wedding, Lin and his wife

acquired a pregnancy test at the drugstore. Lin testified that he learned that she was pregnant and

believed that family planning officials would fine him and force his wife to undergo an abortion.

Instead of going to the Family Planning Office, they therefore fled from Guan Tou and hid at his

father-in-law's residence in the rural village of Nan Yang, which Lin said was two hours away.

When Lin came to America in January 2001, he left his wife and oldest child behind in China.

He testified that he has not spoken to his wife for many years, but this child currently resides with a

cousin. In Immigration Court, Lin testified that, since immigrating, he fathered another child, born

---

[1]Lin elaborated on the minimum age requirements in the original affidavit he attached to his application for asylum. He wrote, "we did not meet the minimum age requirements for marriage of 25 for me and 21 for her based on our respective marriage 'categories.'" At the time they were married, Lin was 22. He does not give his wife's birthday, but she was at least 18.

in the United States, which he and his "current girlfriend" sent to live in China with his girlfriend's father. There is also evidence in the record that suggests Lin might have fathered a third child, after the IJ denied his application. Br. Pet'r at 32.

II

In asylum cases, petitioners bear the burden of demonstrating that they qualify as refugees as a result of past persecution or a well-founded fear of future persecution. *See* 8 U.S.C. § 1101(a)(42)(A). There are two components to the IJ's evaluation of an application. The first is a credibility determination, and the second is whether the evidence rises to the level of persecution. As an initial matter, the petitioner did not allege that he suffered past persecution in China. Rather, the petitioner's claim was based solely on his fear of future persecution. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

At Immigration Court, Lin argued that his fear was based on his prior employment in his father's bookstore, his unregistered marriage, and the birth of his oldest child in China. Lin testified that he feared being sterilized and tortured if he were deported. In support of his application for asylum, Lin also introduced a written account of these events and affidavits by his father, two aunts, and two friends. Although Lin had fathered an additional child in America by this time, he and his counsel never allege a connection between Lin's fear of persecution and the birth of this second child, a United States citizen. On the basis of Lin's own statements and third-party statements, the IJ made an adverse credibility finding and concluded that Lin had not demonstrated an objectively reasonable fear of future persecution.

Lin filed a timely appeal with the BIA. In this appeal, Lin continued to claim that he had an objective and subjective fear of future persecution for the reasons discussed in Immigration Court. Additionally, Lin argued that the birth of his second child, a United States citizen, who Lin and his American girlfriend sent to live in China, and the anticipated birth of his third child, further supported his fear of future persecution. According to Lin, American-born children are counted under the one-child policy. He filed a motion for remand, citing case law and additional evidence about China's family planning policies that he was purportedly unaware of when he appeared in Immigration Court. It is worth noting that Lin's second child had already been born at the time of the IJ's proceedings, and although his third child had not yet been born when Lin filed his motion to remand, the record does not suggest Lin supplemented his application after the expected date of delivery.

The BIA adopted and affirmed the IJ's decision on January 23, 2008, citing three grounds: (1) the shortcomings and inconsistencies cited by the IJ that were present in the record; (2) the IJ's cogent reasons to conclude that Lin's claim was not credible; and (3) Lin's failure to offer an adequate explanation for these discrepancies on appeal or before the IJ despite being afforded the opportunity to do so. In particular, the BIA relied upon "contradictory evidence concerning whether [Lin] was beaten while detained and the evidence concerning when he learned of his girlfriend's pregnancy" in concluding that the IJ's adverse credibility finding was not clearly erroneous. It further held that Lin's evidence did not sufficiently demonstrate that the birth of his citizen child in the United States gave rise to a well-founded fear of future persecution.

Lin appeals this decision and, in his brief, asks us to reverse the adverse credibility finding and the denial of his application for asylum. Instead of focusing on the arguments developed in the

brief, petitioner's counsel conceded at oral argument that Lin's statements contained serious discrepancies supporting an adverse credibility finding. Petitioner's counsel nevertheless urges us to remand to the BIA. When, as here, the BIA adopts and affirms the IJ's decision, offering little additional analysis, we review the IJ's decision as supplemented by the BIA. *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). We proceed to address, first, whether the IJ's findings support an adverse credibility finding, and second, whether the petitioner demonstrated an objectively reasonable fear of future persecution, in which case he is eligible for asylum.

III

Adverse credibility findings must be supported by substantial evidence and are only overturned if "any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (citing 8 U.S.C. § 1252(b)(4)(B)). Perhaps in recognition of the deferential standard of review we employ, petitioner's counsel conceded at oral argument that there were serious discrepancies in his client's statements that support the IJ's adverse credibility finding. We nevertheless explain the precise grounds on which we affirm, because we are troubled by some aspects of the IJ's analysis.[2] *See Wang v. INS*, 352 F.3d 1250, 1259 (9th Cir. 2003) ("So

---

[2]At times, the IJ overlooks logical and compelling explanations in the record, as when the IJ asserts there was no reason for Lin's wife to take a pregnancy test "within two days of her wedding." The IJ completely disregards Lin's testimony that family planning officials ordered them to appear at their office within two days of their wedding, at which time Lin anticipated they would examine his wife and force her to undergo an abortion if she was pregnant.

Another suspect ground for the IJ's credibility finding is the claim that Lin's account implies his wife was pregnant for slightly longer than nine months. The IJ observes, "I am not suggesting that this is theoretically or physically impossible, but it does strike one as being a very unusual time line or sequence of events." But in contending this time line supports an adverse credibility finding, the IJ relies on mere speculation, not medical evidence, about the infrequency of post-term

long as one of the identified grounds [for the adverse credibility finding] is supported by substantial evidence and goes to the heart of [petitioner's] claim of persecution, we are bound to accept the [IJ's] adverse credibility finding.").

Adverse credibility findings also "must be supported by specific reasons" and "must be based on issues that go to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004).[3] Contradictions or discrepancies in an applicant's written statement, applicant's testimony, and any corroborating evidence that applicant submits can support such a finding. *Gishta v. Gonzales*, 404 F.3d 972, 978 n.12 (6th Cir. 2005). So can the omission of material allegations by the applicant or witness or contradictions between an alien's claims and State Department reports concerning country conditions. *Ibid.* Even statements that are short in detail may support an adverse credibility finding when they concern material allegations. *Dorosh v. Ashcroft*, 398 F.3d 379, 382

---

pregnancies. *See Dia v. Ashcroft*, 353 F.3d 228, 250 (3d Cir. 2003) (holding that an adverse credibility finding based on "speculation, conjecture, or an otherwise unsupported personal opinion" is not supported by substantial evidence).

Still another problematic ground cited by the IJ concerns the name of the village where Lin lived for the year following his arrest. In his written statement, Lin said it was Son Village. Later, in testifying, Lin said it was Sheng Chun. Lin's original affidavit and oral testimony were both translated from Mandarin, and it seems conceivable that Son Village and Sheng Chun refer to the same place. There are various phonetic spellings of Chinese words and different translators were used for Lin's original application and testimony.

[3]We are mindful that the INA, as amended by the REAL ID Act of 2005, permits IJs to consider any "inaccuracies or falsehoods" in an asylum applicant's statements, irrespective of whether such inadequacies go "to the heart of the applicant's claim." Pub. L. No. 109-13, 119 Stat. 302-05 (codified as amended at 8 U.S.C. § 1158(b)(1)(B)(iii)). But this amendment does not apply to Lin's case because he filed his application for asylum before the applicable effective date of May 11, 2005. Pub. L. No. 109-13, 119 Stat. 305-06 (setting the effective dates of various provisions of the REAL ID Act).

(6th Cir. 2004) ("Under BIA rulings, credibility encompasses not just consistency but also plausibility and sufficient detail."). "[I]rrelevant inconsistencies cannot constitute the basis for an adverse credibility determination," *Sylla*, 388 F.3d at 926, but they are relevant when they can be interpreted as "attempts by the applicant to enhance his claims of persecution." *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004).

The first discrepancy concerns Lin's statements about whether the police allowed him to eat while in custody. Lin says he was held for two days following his arrest. In his written statement, he contends that although the police did not provide him with food, a friend who happened to observe the arrest brought him something to eat. Testifying before the IJ, however, Lin said that he "was not allowed to eat." Because Lin's testimony implies not only that the police did not provide him food but that they did not allow him to eat, it contradicts and enhances his original application.

The next discrepancy concerns whether family planning officials threatened Lin with sterilization on the day of his wedding. In his written statement, Lin states that officers ordered him to appear in the Family Planning Office, but does not mention that they threatened him with sterilization or any other punishment. Testifying before the IJ, Lin asserts that the family planning authorities who interrupted his wedding ceremony threatened him with sterilization if he did not report within two days to their offices. This discrepancy clearly enhances Lin's application and goes to the heart of his fear of persecution.

Additionally, several discrepancies between Lin's statements and corroborating evidence he submitted in support of his application provide a basis for affirming the IJ's adverse credibility finding. Of particular note is the discussion of Lin's treatment when in detention. Although Lin

testified that he was not beaten during the two days he was detained, his father submitted a statement asserting that Lin was "beaten cruelly." The IJ called this "a fairly major discrepancy," and the BIA relied upon this specific contradiction in ruling that the IJ's adverse credibility finding was not clearly erroneous. Their emphasis on this statement is justified because the father's claim appears to be a conspicuous attempt to enhance Lin's application.

Although Lin argues that the IJ had an obligation to ask him about this contradiction before relying on it in drawing an adverse credibility finding, the IJ had no such duty because the discrepancy was dramatic and the need to clarify was obvious. Further, Lin had an opportunity to clarify his father's assertion when his own representative asked him whether he was beaten during his detention. Therefore the record does not compel the opposite conclusion—in fact, it indicates the IJ's finding is supported by substantial evidence.

Finally, the record supports the IJ's reliance on inconsistencies between Lin and his aunt's account of the wedding. One of Lin's aunts, who states that she attended the ceremony, said "officers from the local government came to arrest the bride and groom" and that "[t]he wedding was unable to proceed." Lin does not mention any attempt to arrest him or his wife on the day of their wedding; and his written affidavit says that the festivities continued after the investigation. Not only does the aunt's statement contradict Lin's own testimony, it would materially enhance his application.

For the foregoing reasons, the IJ's adverse credibility finding is supported by substantial evidence and the record does not compel us to reach a result contrary to that of the Immigration Court.

IV

On appeal to us from an adverse BIA decision, petitioner must convince us not only that he has a well-founded fear of future persecution, but that the evidence compels such a finding. *Elias-Zacarias*, 502 U.S. at 481 n.1; *see also Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) ("[W]e may not reverse the Board's or the immigration judge's determination simply because we would have decided the matter differently"). Even if this panel affirms the adverse credibility finding against the petitioner, however, "an applicant may prevail on a theory of future persecution . . . so long as the factual predicate of the applicant's claim of future persecution is independent of the testimony that the IJ found not to be credible." *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006).

To establish eligibility for asylum, petitioner must demonstrate (1) that he has a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country; and (3) that he is unable or unwilling to return to that country because of such fear. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b)(2)(i); *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994). Persecution is defined as "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. A petitioner need not prove such persecution is a certainty or even near certainty to be eligible for asylum. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987) (holding that a well-founded fear can be based on an event with less than a 50% likelihood of occurring).

Lin's claim rests on three different events: the sale of Falun Gong texts at his father's bookstore; the circumstances of his wedding and the birth of his first child in China; and the birth of

his second child in the United States. The IJ's denial of Lin's application is supported by substantial evidence. As the IJ observed, Lin failed to satisfy his burden of proof and the record does not compel a contrary conclusion. We further hold that the BIA did not abuse its discretion in declining to reopen and remand Lin's case to Immigration Court; Lin's additional evidence was insufficient to establish a likelihood of future harm arising from the birth of his American-born children.

## A. The Sale of Falun Gong Materials

Although this claim is slightly stronger than the IJ recognized, the record does not compel rejection of the IJ's conclusion. Lin does not practice Falun Gong—he only worked in a bookstore that sold texts about the group's teachings. Aside from Lin's testimony, which the IJ found to be not credible, there is no evidence that authorities imputed Falun Gong beliefs to Lin or that they would do so eight years later. *See Abdulnoor v. Ashcroft*, 107 F. App'x 594, 595 (6th Cir. 2004). Chinese authorities, by Lin's own admission, did not arrest or persecute him in the five months after he returned to Guan Tou, which further undercuts his claim. Finally, the IJ perceptively noted that Lin's father continues to live unscathed in another part of the Fujian province, which suggests Lin has no reason to fear future persecution. *Gumbol v. INS*, 815 F.2d 406, 413 (6th Cir. 1987) (holding that the absence of mistreatment is relevant to determining whether an asylum-seeker's fear of future persecution is well-founded).

## B. Lin's Violation of Marriage and Birth Permit Laws

Substantial evidence supports the IJ's finding that Lin does not have a well-founded fear of future persecution on the basis of his violation of China's marriage and birth-permit laws. There is no presumption that all PRC nationals who have children will be persecuted, 8 U.S.C. §

1101(a)(42)(B), and to establish eligibility for asylum based on family planning policy in the PRC, petitioner must prove the details of a coercive family policy in his home province or city, that he has violated that policy, and that violating the policy would subject him to harm rising to the level of persecution. *Matter of J-H-S-*, I&N Dec. 196, 199-200 (BIA 2007).

As the IJ observed, Lin's wife remains in China and apparently experienced no legal problems as a result of the pregnancy or in the years after their child was born. That so much time has passed without any sign that authorities are still preoccupied with Lin's relatively minor violations of family planning policies further indicates that Lin has no objective ground to fear persecution. Even Lin seemingly concedes this, testifying that were it not for the Falun Gong materials, he would face only fines for his illegal marriage.

In denying Lin's petition for review with respect to this claim, this court need not do more than observe that Lin failed to supply the family planning policy of the Fujian province or his home town.[4] The 2005 State Department Country Report indicates that, at worst, Lin possibly faces fines relating to his PRC citizen child. Lin provided no compelling evidence calling the Country Report's conclusions into doubt or indicating that the application of family planning policies to his circumstances might result in persecution—let alone enough evidence to compel us to reverse the IJ. Thus, Lin has failed to demonstrate he is eligible for asylum.

---

[4]Instead, Lin submitted the family-planning policies of a province and of a town he never lived in. The only relevant evidence that Lin did submit was a lengthy affidavit by the late John S. Aird, a retired demographer, which this court and the BIA have found unpersuasive in previous cases. *See, e.g.*, *Huang v. Mukasey*, 523 F.3d at 652-53; *see also Matter of C-C-*, 23 I. & N. Dec. 899, 901-3 (BIA 2006).

## C. Lin's American-Born Children

Having left his wife and first child in China, Lin took up with a girlfriend in the United States. Prior to his hearing in Immigration Court, Lin fathered an American-born child, whom he and his girlfriend sent to China. Although Lin could have alleged that this child would be counted under the one-child policy, further supporting his fear of future persecution, he and his counsel did not make this argument in Immigration Court.[5] Only while his appeal was pending with the BIA did Lin argue for the first time, in a motion to reopen and remand, that changed personal circumstances—the birth of his second child in the United States and the fact his girlfriend was pregnant with his third child—gave rise to a well-founded fear of future persecution.

The BIA has broad discretion to grant or deny a motion to reopen and remand a removal order, and we review its denial for an abuse of discretion. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). The BIA abuses its discretion only when its decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005). The BIA declared that the evidence submitted by Lin failed to demonstrate that his second

---

[5]In Immigration Court, Lin did not contend this second child would be counted under the one-child policy or would result in future persecution, but the IJ nevertheless commented that the fact that Lin sent the child to live in China undercut his purported fear of returning. We affirm the IJ's denial of Lin's application for the reasons discussed in part IV.B *supra*, but separately note Lin's decision to send his second child, who is a United States citizen, to live in China, does not necessarily undermine his application for asylum. The IJ's conclusion hinges on the unsubstantiated assumption that Lin, a Chinese citizen, and his U.S.-citizen child are subject to the same risks. *See Lim v. INS*, 224 F.3d 929, 935 (9th Cir. 2000) (holding that the ongoing safety of family members in petitioner's country of origin undermines an application for asylum when family members are "similarly situated" and are "subject to similar risk").

child would be counted under China's one-child policy, or that he would be persecuted in the event

that the child is counted under the policy.

Petitioner alleges that the BIA abused its discretion by improperly relying on *In re J-W-S-*, 24

I&N Dec. 185 (BIA 2007). The BIA cited *In re J-W-S-* in denying Lin's motion, observing that "the

evidence [Lin submitted was] insufficient to meet his burden." Although petitioner is correct that *In

re J-W-S-* does not establish a bright-line rule precluding Chinese asylum applicants from establishing

future harm on the basis of American-born children, the BIA order did not cite the case for this

proposition. Rather, the BIA cited *In re J-W-S-* in evaluating the sufficiency of Lin's evidence.[6] Lin

relied on precisely the same evidence as the petitioner in that case, including the 2004 Aird affidavit,

documents about the family planning policies of Changle City in the Fujian province from 1995 and

1999, and an administrative decision from the Department of Family-Planning Administration in the

Fujian province dating back to 2003. *See id.* at 189-190. These documents are no more compelling

in this case,[7] and the BIA did not clearly abuse its discretion in finding that they were inapplicable.

---

[6]For this reason, *Xiao Kui Lin v. Mukasey*, 553 F.3d 217 (2d Cir. 2009) is not on point. In that case, the Second Circuit vacated a BIA order that incorrectly characterized *In re J-W-S-* as holding that "China has no national policy of forcibly sterilizing those who have broken the population control laws by having children in other countries." *Id.* at 221. Indeed, the Second Circuit acknowledged that "the reasoning in . . . *J-W-S-* . . . could in many circumstances support a prediction that the BIA would reject an asylum applicant presenting evidence sufficiently similar to that analyzed in these three precedential cases." *Id.* at 224. In fact, the Second Circuit has relied on *In re J-W-S* in other cases for this exact proposition. *See, e.g.*, *Jian Hui Shao v. Mukasey*, 546 F.3d 138 (2d Cir. 2008).

[7]As discussed in n.3 *supra*, we have previously questioned the Aird affidavit's import. The problems with the Aird affidavit are especially significant in cases like this one, as it does not contain even anecdotal evidence indicating that Chinese nationals who have American-born children have ever been sterilized or otherwise persecuted. Lin's additional evidence is also problematic: Lin never

*Id.* at 192 ("[T]he evidence of record does not demonstrate that the Chinese government has a national policy of requiring forced sterilization of parents who return with a second child born outside of China.").

Other courts have declined to vacate similar orders of the BIA involving similarly situated petitioners. *See Huang v. Mukasey,* 523 F.3d 640, 654 (6th Cir. 2008); *Aie Wu v. Mukasey*, No. 07-3148, 2008 WL 885844, at *2 (2d Cir. Mar. 31, 2008) (referring to the 2007 State Department Report in finding "Chinese regulations stipulate that children born overseas are not counted for purposes of administering the family planning policy"); *Song Wang v. Keisler*, 505 F.3d 615, 622-23 (7th Cir. 2007) (affirming BIA's determination that applicants did not establish there would be any penalty for United States citizen children, even if applicants were to return to PRC with their children). Even if *In re J-W-S-* does not depend on a categorical rule denying applications for asylum that rely on fear of Chinese persecution of those with foreign-born children, it does establish that the evidence relied upon by the petitioner in that case is necessarily inadequate on its own to establish that American-born children will be counted under the one-child policy, or that the parents of multiple American-born children have any objective reason to fear they will be persecuted.

In any event, Lin gives absolutely no justification for failing to make this argument sooner. Lin's second child was already born when he testified in Immigration Court, and all of the evidence

---

resided in Changle City; and the 2004 administrative decision is controverted by the State Department's 2005 and 2007 reports, which conclude that children born overseas are not typically counted under the one-child policy. *In re J-W-S-*, 24 I. & N. Dec. at 190-91; *see also id.* at 193 (discussing the Fujian province in particular). Lin does not supplement this insufficient evidence with other materials or provide any basis for believing that his children will be counted under the one-child policy such that he may be persecuted.

he cites was available at that time. To demonstrate that the BIA abused its discretion in denying his

motion to remand, Lin would have to show the evidence at issue "is material and was not available

and could not have been discovered or presented at the previous hearing." 8 C.F.R. §

1003.23(b)(4)(ii). The only evidence Lin cites that was unavailable at the time of his Immigration

Court proceeding is the conception and birth of his third child. At oral argument, Lin's counsel

argued the BIA abused its discretion in not addressing or providing any reason for declining Lin's

motion to remand with respect to Lin's third child. Although petitioner's brief mentioned the motion

to remand in a couple of instances, these references were not accompanied by a developed argument

and therefore it was waived. *United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008); *United*

*States v. Demjanjuk*, 367 F.3d 623, 638 (6th Cir. 2004); *United States v. Mick*, 263 F.3d 553, 567 (6th

Cir. 2001).

Even if the argument had not been waived, it is unnecessary to remand in cases like this one

where we can predict with confidence that the agency would reach the same result absent this error.

The BIA's reference to *In re J-W-S-* establishes that it believed Lin's evidence was insufficient to

show a likelihood that he would be persecuted on account of his children. The petitioner in *In re*

*J-W-S-* was similarly situated in that he had two American-born children. Although that petitioner

did not also have a child born in China as Lin does, Lin did not claim that this difference is relevant

in his motion to remand and none of the evidence he submitted suggests that it is material. Lin is not

permitted to supplement the record here, *Huang*, 523 F.3d at 656, and the quality of the evidence he

did submit to the BIA demonstrates the futility of remanding to the BIA for further proceedings. *See*

*Chen v. United States*, 471 F.3d 315, 339 (2d Cir. 2006) ("The overarching test for deeming a remand

futile . . . is when the reviewing court can 'confidently predict' that the agency would reach the same decision absent the errors that were made").

V

The IJ's findings are supported by substantial evidence and the BIA did not abuse its discretion in denying Lin's motion to reopen and remand. Therefore we DENY the petition for review. Because Lin failed to meet the burden of proof required to establish eligibility for asylum, he cannot satisfy the higher burden for withholding of removal or protection under CAT. *Rreshpja v. Gonzales*, 420 F.3d 551, 557 (6th Cir. 2007).