NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0020n.06

No 08-3976

**FILED**
**Jan 12, 2010**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **AMER FADHEL AL AMERI**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner*, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | **O P I N I O N** |
| **ERIC H. HOLDER, JR.**, Attorney General, | ) | |
| | ) | |
| *Respondent*. | ) | |
| | ) | |

BEFORE:     KENNEDY, COLE, and GRIFFIN, Circuit Judges.

**COLE, Circuit Judge.** Amer Fadhel Al Ameri petitions for review of a decision by the Board of Immigration Appeals that summarily affirmed an immigration judge's denial of his application for withholding of removal and protection under the Convention Against Torture. Al Ameri sought relief based on his uncorroborated claim that he is more likely than not to be persecuted and tortured if deported to Yemen. The immigration judge determined that Al Ameri was not credible and that, even were his testimony accepted as true, he had not established that he was more likely than not to be persecuted based on his membership in a particular social group or tortured if removed to Yemen. The Board of Immigration Appeals summarily affirmed the immigration judge's decision. For the reason below, we **AFFIRM** the decision of the Board of Immigration Appeals and **DENY** Al Ameri's petition for review.

## I. BACKGROUND

Al Ameri is a native and citizen of Yemen. In June 1999, he entered the United States on a non-immigrant visitor's visa that expired in December 1999. In January 2003, the Department of Homeland Security issued Al Ameri a notice to appear, charging him with removability for remaining in the United States beyond the duration of his visa. Al Ameri conceded removability but submitted an application in February 2006 for withholding of removal under the Immigration and Nationality Act (INA) and protection under the Convention Against Torture (CAT).

In his application, Al Ameri claims that he faces persecution and torture in Yemen because the Mareeb tribe, allegedly the most powerful in Yemen, is seeking revenge for his cousin's murder of a tribesman. According to the application, Al Ameri's cousin killed the tribesman following an argument and subsequently was arrested and executed. The Mareeb tribe, not satisfied with the execution, is "determined to pick up any one of" Al Ameri's family. (Pet'r Asylum Application, Administrative Record ("R.") 171-72.) Because Al Ameri "happened to be a family member of the killer, a close relative and an old friend," and because the tribe believed that Al Ameri had information regarding the murder, he "was the focus of their wrath." (*Id.*) At his hearing, Al Ameri's explanation of why the tribe had targeted him shifted: according to his testimony, he actually was present when the murder was committed, so the Mareeb tribe believes he was personally involved in the crime. (Hr'g Tr., R. 90-91, 96-97, 105-06.) As a result, individuals who Al Ameri believes were members or friends of the Mareeb tribe would from time to time attempt to follow him in Yemen and allegedly continue to ask occasionally about his whereabouts, although Al Ameri has never been threatened nor harmed by them. (*Id.* at 89-92, 99-101, 106, 108.)

On April 18, 2007, the immigration judge (IJ) denied Al Ameri's withholding and CAT claims. The IJ found that Al Ameri's story was not credible, pointing to several purported inconsistencies, the most important of which was the divergent explanations in Al Ameri's application and testimony as to why he allegedly was targeted by the Mareeb tribe. Even were Al Ameri credible, the IJ stated, "potential victims of tribal revenge" does not constitute a particular social group for the purposes of withholding of removal. *See* 8 U.S.C. § 1231(b)(3) (withholding available only where there is a likelihood of persecution based on "race, religion, nationality, membership in a particular social group, or political opinion"). Nor had Al Ameri demonstrated that he had been subject to past persecution or more likely than not would be subjected to future persecution or torture were he deported to Yemen. Accordingly, he had "failed miserably" in meeting the burden of proof for withholding of removal and CAT relief. (IJ Decision, R. 62.)

On July 23, 2008, the Board of Immigration Appeals (BIA) affirmed the IJ's decision without issuing an opinion. Al Ameri filed a timely notice of appeal on August 12. We have jurisdiction to review the BIA's final order of removal. *See* 8 U.S.C. § 1252(a)(1).

## II. STANDARD OF REVIEW

There is a high burden of proof to qualify for withholding of removal under the INA or relief under the CAT. Under 8 U.S.C. § 1231(b)(3), an applicant must be granted withholding "if he demonstrates 'a clear probability of persecution' by presenting evidence that shows . . . 'it is more likely than not that [he] would be subject to persecution'" should he return to his native country. *Dashi v. Gonzales*, 214 F. App'x 581, 584 (6th Cir. 2007) (quoting *INS v. Stevic*, 467 U.S. 407, 424 (1984)). The likelihood of persecution has to be based on the applicant's "race, religion, nationality,

membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1231(b)(3); *see also*

*Sempagala v. Holder*, 318 F. App'x 418, 422 (6th Cir. 2009) (discussing what conduct rises to the

level of persecution). To qualify for CAT relief, the alien must establish that "it is more likely than

not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. §

1208.16(c)(2); *see also id.* § 1208.18(a)(1) (defining torture under the CAT). Unlike for

withholding, however, the applicant need not demonstrate the torture will occur on account of his

race, religion, nationality, membership in a particular social group, or political opinion. *See Ben*

*Hamida v. Gonzales*, 478 F. 3d 734, 741 (6th Cir. 2007).

In reviewing an asylum determination where the BIA affirms the IJ's decision without issuing

its own opinion, we review the IJ's opinion. *See Ndrecaj v. Mukasey*, 522 F.3d 667, 672 (6th Cir.

2008) (citing *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003)). We review the IJ's legal conclusions

de novo and factual findings under the "substantial evidence" standard. *Id.* (factual findings); *Ramaj*

*v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006) (legal conclusions). Under the substantial evidence

standard, "findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to

conclude to the contrary.'" *Guang Run Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting

8 U.S.C. § 1252(b)(4)(B)). Facts supporting credibility determinations are reviewed under the same

standard. *El-Moussa v. Holder*, 569 F.3d 250, 255-56 (6th Cir. 2009) (citing *Guang Run Yu*, 364

F.3d at 703).

### III. DISCUSSION

Al Ameri argues that the IJ erred in determining that he was not credible and that he had

failed to establish he is more likely than not to be persecuted and tortured if returned to Yemen.

Because he filed his application after May 11, 2005, the REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231 (codified in scattered sections of 8 U.S.C.), governs the IJ's adverse credibility determination. *See El-Moussa*, 569 F. 3d at 256. Under the REAL ID Act, credibility determinations in removal proceedings are based on "the totality of the circumstances" and take into account "all relevant factors," including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1229a(c)(4)(C); *see also El-Moussa*, 569 F.3d at 256. As before the REAL ID Act, the IJ must state "specific reasons" justifying an adverse credibility determination. *Yu Lin v. Mukasey*, 293 F. App'x 404, 407 (6th Cir. 2008) (citing *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005)). "Speculation and conjecture cannot form the basis of an adverse credibility finding." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005) (internal quotation marks and citation omitted). Nonetheless, "[s]o long as one of the identified grounds [for the adverse credibility finding] is supported by substantial evidence," we must accept the IJ's determination. *Yang Lin v. Holder*, 320 F. App'x 428, 432 (6th Cir. 2009) (internal quotation marks and citation omitted) (second alteration in original).[1]

---

[1]*Yang Lin* was decided before the REAL ID Act went into effect. *See* 320 F. App'x at 432 n.3 (so noting). Its restrictions on inconsistencies that do not "go to the heart of the applicant's claim" or that cannot "be interpreted as attempts by the applicant to enhance his claims of

Accordingly, because we find that substantial evidence supported the IJ's reliance, in deeming Al Ameri not credible, on the divergent explanations in his application and testimony as to why he allegedly was targeted by the Mareeb tribe, we need not address the other purported inconsistencies on which the IJ relied. Al Ameri does not specifically challenge the IJ's reliance on this inconsistency, even though it formed an integral part of the IJ's analysis. Instead, he argues generally that the IJ erred in relying on omissions from Al Ameri's application, since Al Ameri had explained that he simply did not include much detail there. However, the account provided in Al Ameri's application is not simply a less detailed rendering of the story he gave at the hearing. Rather, the application provides a substantively different explanation for Al Ameri's alleged targeting by the tribe—his familial relation to the killer—than that provided at the hearing—his presence at the scene of, and perceived involvement with, the murder. The latter explanation, if true, would provide a far more compelling rationale for the Mareeb tribe's continuing interest in Al Ameri, making suspect its omission from the application. Thus, while we exercise care in evaluating omissions from asylum applications, *see Liti*, 411 F.3d at 637, we find the IJ reasonably relied on this omission in finding that Al Ameri was not credible. Indeed, even under the more lenient standard applicable prior to the REAL ID Act, this inconsistency would have provided sufficient grounds for an adverse credibility determination. *See id.* (omissions may form the basis of an adverse credibility determination if substantially related to the applicant's claim); *Sylla v. INS*, 388

---

persecution" do not apply to cases to which the Act applies. *See id.*

F.3d 924, 925-26 (6th Cir. 2004) (only inconsistencies that can be viewed as attempts to enhance the applicant's claims bear on credibility).

Because the alleged threat from the Mareeb tribe provides the entire basis for Al Ameri's claim of being more likely than not to be persecuted and tortured if deported to Yemen, the IJ's adverse credibility determination necessarily undermines both his withholding and CAT claims. Moreover, even were Al Ameri to be found credible, his withholding and CAT claims would still fail. Al Ameri challenges the IJ's determination that "potential victims of tribal revenge" does not constitute a particular social group for the purposes of withholding of removal. *See* 8 U.S.C. § 1231(b)(3). We lack jurisdiction to review this challenge, however, because Al Ameri did not present this claim to the BIA. *See Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) ("[I]n an appeal from an order of removal, we have jurisdiction to review only those claims as to which the alien has exhausted his administrative remedies, that is, those claims 'properly presented to the BIA and considered on their merits.'") (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004)). And even had the IJ erred on this point, Al Ameri's allegations that the Mareeb tribe occasionally attempted to follow him and continue to ask from time to time about his whereabouts are not sufficient to demonstrate that he is more likely than not to face persecution in Yemen. *See Sempagala*, 318 F. App'x at 422 (stating that persecution "'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty'") (quoting *Kaba v. Mukasey*, 546 F.3d 741, 748 (6th Cir. 2008)). Nor are they sufficient to demonstrate he is more likely than not to be tortured. 8 C.F.R. § 1208.16(c)(2)-(3).

## IV. CONCLUSION

For the reasons above, we **AFFIRM** the BIA's decision and **DENY** Al Ameri's petition for review.